EDGARTON and others *v.* FURST & BRADLEY MANUF'G Co. and others.

*(Circuit Court, N. D. Illinois. July 19, 1881.)*

1. LETTERS PATENT—HORSE HAY-RAKES.
    Letters patent granted to George Whitcomb, October 5, 1858, for an improvement in horse hay-rakes, are invalid because the improvement was in public use more than two years prior to the application for a patent.

2. COMITY.
    Circuit courts will follow the decisions in other circuits, only where the same questions were raised on substantially the same evidence.

3. DISCLAIMER—REISSUES.
    A patentee cannot claim in a reissue what he disclaimed in the original.

4. CLAIMS—VOID FOR UNCERTAINTY.
    Claims must be certain. Therefore, the claim for the arrangement of the rake-head, E, and foot-treadles, H J and G K, or either, in relation to each other, and the axle, B, substantially as and for the purpose described, is void for uncertainty, because it does not appear whether the patentee intended to cover, by this claim, the two treadles working together for their different purposes, or whether he intended to cover each one as a separate device.

*Thomas H. Dodge,* for complainants.

*West & Bond,* for defendants.

BLODGETT, D. J.    These two suits are for infringement of letters patent issued on the fifth day of October, 1858, to George Whitcomb, for an improvement in horse hay rakes.   The patent was reissued June 16, 1868, in two parts, as reissues No. 2,994 and 2,995, and on the fifth of October, 1872, was extended for a further term of seven years.

The first suit is brought by the owners of the original term, and the second by the owners of the extended term.

The defences set up are:

*First,* the invalidity of the reissued claims involved in this suit; *second,* that the devices covered by the reissued patent were in public use, with the knowledge or consent of the patentee, for more than two years prior to his application for this patent, and also that they were publicly known and used by others for more than that time; *third,* that the improvements in question are anticipated by the older art; and, *fourth,* that the defendants do not infringe.

The patent in question has reference to what are known as wire-tooth horse hay rakes, and the claims of the patent alleged to be infringed by the defendants are the second and fourth of reissue No. 2,994, which are as follows:

"*Second.* The combination and relative arrangement of the hinged rake-head with the supporting axle and carrying wheels, substantially as shown and described, whereby the head is supported above the rear upper edge of the axle, as shown, and the lower ends of the teeth, when gathering the hay, occupy positions in rear of the tread of the wheels, and forward of a vertical plane on a line with the rear edge of the wheels, substantially as shown in the accompanying drawings.

"*Fourth.* The arrangement of the rake-head, E, and foot-treadles, H J and G K, or either, in relation to each other and the axle, B, substantially as and for the purposes set forth."

In his specifications, forming part of the original patent, the patentee inserted a disclaimer as follows:

"I do not claim the wire teeth, F, attached to the head, E, as shown, for such device, mounted on wheels, is in quite common use."

This disclaimer is wholly omitted from the reissued patent, and the only claim in the original patent was:

"The arrangement of the treadle, J K, lever, I, rake-head, E, arms, G K, bar, F, joint, C, and adjustable rope, L, substantially as and for the purposes set forth."

This patent was before the United States circuit court of Massachusetts in June, 1872, in the case of *Brown* v. *Whittemore,* 5 Fish. 524, Mr. Justice Clifford and Judge Lowell, presiding, and the two

claims now in question were sustained under the facts in that case, and it was again before the same court, Judge Lowell, presiding, in December, 1879, in the case of *Edgarton* v. *Beck,* and the fourth claim sustained under the facts in that case. In the first of these cases the court said:

"The record does not contain a copy of the original patent, and there is no evidence of what changes, if any, are found in the reissue. In the absence of such evidence we must, of course, assume that the action of the patent-office was well warranted by the facts, and that the reissued patent is open to only such objections as might have been raised to the original patent."

In *Brown* v. *Whittemore* the second point made in this case seems to have been urged, and the court said:

"Upon a very careful examination of the evidence we are of opinion that the combinations of the second and fourth claims were not only invented by Whitcomb, but that they had not been publicly used or sold with his consent before the time in question. * * * And, though the evidence is not all on one side, yet the preponderance of it is that the combination of the treadle for raising the rake-head with the other devices was not fully discovered and used before June, 1856."

In *Edgarton* v. *Beck* the contest seems to have been mainly over the questions of novelty and infringement.

But the proofs in *Brown* v. *Whittemore,* on the question of prior use and sale with the consent of the patentee, and in *Edgarton* v. *Beck,* on the question of novelty, do not seem to have been the same as in the cases now before the court; and the original patent is before this court, which was not before the court in the *Whittemore Case.*

Of course, if the testimony in these cases was substantially the same as that in the cases heretofore decided by the learned judges in the Massachusetts circuit court, I should feel wholly bound by their decisions and the construction of the patent given by them. But, as it is evident from the inspection of this record that I have a different combination of facts to deal with from what has been heretofore presented, I must consider these cases in the light of their own evidence.

The first objection to the second claim is that it comes within the disclaimer of the original patent.

"I do not claim the wire teeth, F, attached to the head, E, as shown, for such a device, mounted on wheels, is in quite common use."

What is it that Whitcomb here disclaims? My own construction is that it is the rake-head, E, mounted on wheels, as described in his specification and shown in his drawing; and this rake-head and mode of mounting it is described in his original specifications in the following language:

"The back end of the shafts or thills, C C, extend a trifle back of the axle, B, and to the back end of the thills, beyond the back part of the axle, a rake-head, E, is connected by joints or hinges, C, the hinges being at the under side of the rake-head, as shown clearly in figure 1, so that the head may work thereon as a fulcrum."

Figure 1, in the drawing of the original patent and in the reissued patent, shows the rake-head made of a square stick of timber, with an eye-bolt passing through from corner to corner, which, with an eye-bolt or staple passing through the end of the thill, makes the joint or hinge by which the rake-head is attached to the carriage. By this arrangement the teeth hang nearly in a line with the periphery of the wheel, the points coming to the ground just back of the tread of the wheel.

Naturally enough the curved rake teeth will hang or move somewhat in the line of the periphery of the wheel, and they will hang just back of the tread of the wheel.

If I am right in my construction of this disclaimer, there can be no doubt that the second claim of the reissue is for the very thing which Whitcomb disclaimed and said was in common use in his original specification. He brings this case clearly within the principle laid down by the supreme court of the United States in *Leggett* v. *Avery*, 101 U. S. 259:

"We think it was a manifest error of the commissioner in the reissue to allow the patentee a claim for an invention different from that which was described in the surrendered letters, and which he had thus expressly disclaimed. The pretence that an error had arisen by inadvertence, accident, or mistake, within the meaning of the patent law, was too bald for consideration. The very question of the validity of these claims had just been considered and decided with the acquiescence and the express disclaimer of the patentee. If in any case, where an applicant for letters patent, in order to obtain the issue thereof, disclaims a particular invention or acquiesces in the rejection of a claim thereto, a reissue containing such claim is valid, (which we greatly doubt,) it certainly cannot be sustained in this case."

Then, again, they say, on the same page:

"As before remarked, we consider it extremely doubtful whether reissued letters can be sustained in any case where they contain claims that have once been formally disclaimed by the patentee, or rejected with his acquiescence, and he has consented to such rejection in order to obtain his letters patent. Under such circumstances, the rejection of the claim can in no just sense be regarded as a matter of inadvertence or mistake. Even though it was such, the applicant should seem to be estopped from setting it up as an application for a reissue."

So, too, in the bottle-stopper case, lately before Judge Shipman, (*Putnam* v. *Tinkham*, 4 FED. REP. 411,) the learned judge says:

"The claim is as follows: 'The internally located bottle stopper, B, provided with a hinged or jointed handle or bail, C, composed of two elastic legs or branches, and an eye or finger loop, as and for the purpose set forth.' He virtually disclaims rigid handles, and says that his invention is designed to avoid such a method of construction. It is useless to say that by a rigid handle he merely meant a bail without spring action, for the entire paragraph shows that he also meant a handle so jointed or hinged to the stopper that it could be turned away from the mouth of the bottle. He intended to point out that his handle or bail was both hinged to the stopper and had elastic legs. The reissue covers a device in which the bail is attached to the stopper in any manner. The hinged construction is briefly alluded to as one which accomplishes a certain result. * * * In the original patent the patentee informed the public, with precision, and after deliberation, that his invention was an improvement upon a rigid handle, and limited himself to a hinged or jointed handle. It has now become important for the plaintiff to possess himself of the territory which his assignor attempted to occupy, but abandoned, and the ownership of which he virtually disclaimed. A comparison of the two patents shows that the case is clearly within the principles which have been recently and frequently announced by the supreme court as applicable to reissues. The reissue is void because it is on its face for a different invention from that which was embraced in the original patent. *Russell* v. *Dodge*, 93 U. S. 460; *Ry. Co.* v. *Sayles*, 97 U. S. 554; *Powder Co.* v. *Powder Works*, 98 U. S. 126; *Leggett* v. *Avery*, 17 O. G. 445."

These authorities seem to fully meet this case, and I can put no other construction upon them than that this claim is void by reason of the original disclaimer. This patentee had no right, after having stated positively to the world and to the patent-office that he did not claim the idea of mounting the rake-head upon the top of the carriage, by a reissue, to claim this as an element of invention by himself. But if there is room for doubt as to the soundness of this position, I am also clear that the defendant does not infringe this claim. The claim is for the combination, etc., whereby the head is supported above the rear upper edge of the axle, as shown. The defendant's rake-head is suspended behind or in the rear of the axle by brackets, hung, so to speak, behind the axle, instead of being supported above the axle.

In *Edgarton* v. *Breck* Judge Lowell says:

"The difficulty with the second claim of the reissue, as applied to this case, is that the patentee has seen fit, for some reason, to describe his rake-head as supported above the upper edge of the axle, and the defendant's rake-head is on a line with the axle. It may be that this limitation is unnecessary, but it is found in the second claim, and I do not feel at liberty to disregard it."

The inspection of the two models before me shows that the distinction taken by Judge Lowell was mechanically and technically correct. The specification and drawing described the particular manner and place where and how the patentee, Whitcomb, supported his rake-head upon the carriage. Judge Lowell sees fit to confine him to that special method of so supporting his rake-head. The defendant does not literally support his rake-head upon the axle at all, but by means of the brackets he suspends or hangs it in the rear of the axle, so that a different function or mode of operation is accomplished by defendant's rake-head from what is accomplished by the Whitcomb rake-head. The Whitcomb rake-head, having for its point of motion the place of attachment to the thills by its hinge, necessarily made it more difficult to keep the teeth upon or near the ground while gathering the load, while by the peculiar manner in which defendant's rake-head is suspended, its whole weight aids in holding it down in working position.

Probably the testimony before Judge Lowell, in this case, showed that Whitcomb must, from the state of the art, be confined to the specific device—that is, the special place where, and mode by which, he supported his rake-head on the carrying wheels; because the proof in this case shows that Randal Pratt had mounted his rake-head over or on the axle long before Whitcomb entered the field, and that Whitcomb himself, and Banks and Craft, had, as early as 1853, 1854, and 1855, made rake-heads with the heads mounted on or over the axle and behind the axle.

Randal Pratt, in his patent granted in 1856, says:

"Over the main axle, and secured to it by studs or posts, is a rod or axle marked *c c*, extending the whole length between the wheels, to which the teeth of the rake are attached, by any form of movable joint, so that each may move up and down independent of the rest. This rod also forms the center of motion of the apparatus for raising and depressing the teeth, to be hereafter described."

An inspection of Pratt's patent shows his rake-head supported over the axle in substantially the same way; not, of course, attached by just the same kind of joint or hinge, but mounted over the axle so that the teeth fall outward and backward almost in the line of the wheels, and come to the ground just back of the tread of the wheels. That is, there may be, in the practical full-sized rakes, a few inches difference, but not enough to make a distinction or difference in the principle or mode of operation of the two devices in that regard.

The same principle and mode of operation, but differently worked

out, are found in Delano's patent of 1849, Martz's patent of February; 1856, and in Grant's English patent of 1847.

As to the fourth claim it is urged by the defendants that this claim is void for uncertainty, because it does not describe an operative mechanism. It is for the "arrangement of the rake-head, E, and foot treadles, H J and G K, or either, in relation to each other, and the axle, B, substantially as and for the purposes set forth."

This claim does not connect the treadles with the rake-head nor the axle, nor show how these treadles are operative parts of the machine. The description of these in the reissued patent is as follows:

"To the upper end of bar or arm, F, are hinged or pivoted the rear ends of the arms, G and H. The front end of arm, G, is pivoted or hinged to the hand-lever, I, which in this instance is slotted out to receive the lever, G, as shown at $d$, while its lower end is hinged or pivoted to the front ends of the braces, $a^1$ $a^1$, as shown at $e$. The lower end of arm, H, is hinged or pivoted to the rear and lower end of the foot-treadle, J, the front end of which treadle, J, being hinged or pivoted to the angle-braces, $a^1$ $a^1$, as shown at $f$. Another foot-treadle, K, is hinged or pivoted to the angle-braces, $a^1$ $a^1$, as shown at $g$, and the rear inner part of the foot-treadle, K, is connected to the front part or end of arm, G, by a link or rod, $h$."

Here is a description of two separate treadles operating independently of each other. Their functions are different, and no part of one forms any part of another. The words "or either" would seem to indicate that it was the purpose of this patentee to claim that if any person used both or one of these treadles he thereby infringed upon this claim,—that is, if a rake is made with the treadle, H J, for the purpose of unloading the rake, and an entirely different device from the treadle, G K, for holding the rake teeth down while gathering the hay, this claim is thereby infringed; that is to say, the true construction of this claim contended for by complainants is that the words "or either" cover the use of either of these treadles for the purpose of performing the function they respectively fulfil in complainants' rake. If this is the construction of this claim, then the words "in relation to each other" must be disregarded, as these are words which show combination, or a joint or common function, in the parts described. I think that you must reject the words "in relation to each other," as applicable to these treadles, or else the two treadles are to be treated as independent organisms, each one of which is covered by this claim.

It seems to me that, as a combination of parts, this claim must be held void for uncertainty, as I have already said, because it does not show whether the patentee intended to cover by this claim the two

treadles working in combination with each other for their different purposes, or whether he intended to cover each one as a separate device, so as to be able to punish any infringer who used both or only one. In other words, it seems to me he attempts here to cover not only the combination of these treadles with the axle, but each separate element of his combination; and this, I think, cannot be allowed. But even if I am wrong in this construction, still it seems to me that this claim must be held inoperative, because it shows no useful result which can be produced by this mechanism alone. He does not show that these treadles are to operate in combination with the bar or standard, F¹, so as to work the rake-head either to unload or hold it down while gathering the hay.

As claimed, these treadles are simply two sticks, as was said upon the argument, which are not connected with any part of the mechanism. It is true that the words "as shown" refer us to the specifications and drawings of the patent; but when we examine these specifications and drawings, we find that these treadles do not reach any operative combination or connection with the axle except through the rake-head, and it is so obvious that it needs no argument, that the treadles and axle alone would not rake hay or perform any other effective work; so that a claim of the treadles and axle gives us no operative mechanism. But without being hypercritical as to the language of this, or either of these claims, I find from the proof that both these treadles were used and sold with Whitcomb's consent more than two years before the patent was applied for. Those treadles are both shown in the three full-sized rakes in evidence in this case. These rakes were, I am satisfied, made and sold as early as 1855. The only substantial difference between these rakes and the patent is the mode of hinging the rake-head to the axle or carriage. In the full-sized rakes shown in evidence the rake-head is fastened to the carriage by clasps, which allow the rake-head to revolve within the clasps upon its own axis. This rake-head is attached to the carriage frame by the joint, C, so that the lower corner of the rake-head is made the center of motion,—a difference which may have some mechanical value, but is only a specific difference.

These treadles which I am now considering were in use in the old rakes in 1854 and 1855. This evidence shows that Whitcomb began to make rakes as early or earlier than 1851. In 1852 he applied for a patent on the form of rake which he then claimed to have invented, which application was rejected. In this application he shows a horse rake with wire teeth, and the teeth attached directly to the

axle of the carriage and operated by a mechanism something like a reach, as it was called, or the bar, H, and the lever, I.   In 1853 he adopted a separate rake-head, which, of course, he or some one mounted on or attached to the carriage.   This separate rake-head, in order to be operative or of any use to the mechanism, must be in some way attached to the carriage.   Some mode of unloading was also necessary to the operation of this machine.   As all these rakes were intended to allow the driver to ride, some kind of treadle or lever, operated by the feet as well as the hands, was almost a necessity, and was indispensable to the practical operation of this rake by one man.   The whole organism shows that it was intended that the driver should ride upon the carriage, and that he should operate the rake from his position on the driver's seat.   There must, therefore, be embodied in the mechanism, in some form, levers and treadles which would enable the driver to operate the rake, to hold the teeth down while gathering the hay, and raise the rake-head when loaded.

I therefore come to the conclusion that treadles and levers were early adopted in the progress of the developement of this rake, and that, substantially, the treadles which are shown in the Whitcomb patent were in use for much more than two years prior to the application for this patent.

The testimony on the part of the defendants shows clearly, as evidenced by the recollection of witnesses, that such treadles were used; but from the very nature of the invention, and its progress, step by step, it seems to me that one of the most natural devices that the mind of the constructor would be directed to in making a practical riding hay rake, would be the method of operating the rake from the driver's seat, and they could hardly have attempted to make a device for that purpose without the adoption of treadles.   This view seems also to be so fully in harmony with the recollection of the witnesses who have testified as to the development of the finally perfected rake, that I consider it confirmatory of the testimony of those witnesses.

Whitcomb first began to make rakes at Glenville, Connecticut.   He moved to Brundage's Corners, which were only a couple of miles from Glenville, in 1853, and there had his factory until the fall of 1855, when he moved to Port Chester; these places being all within a very few miles of each other.   This locality seems to have been one in which the manufacture of this class of horse rakes had its first inception.   A number of persons besides Whitcomb were engaged in the same line of manufacture.   It is true that they may have followed Whitcomb.   He may have been the inventor of the rake-head, E, as

shown in his patent, and he may have been the first person to support it upon a carriage.   He may have been the inventor of the treadles in question.

The only question is, did he apply for a patent before these parts of his rake became common property? and my conclusion from 'the proof is that Whitcomb did not make his application for a patent until more than two years after this rake-head and those treadles had come into public use with his consent.   The full-sized rakes that are put in evidence in this case show satisfactorily that these devices, these treadles and levers, were adopted and in use, and were part of these original rakes, at the time they were made and put upon the market, and that they were actually made and sold as early as the haying season of 1854.

This certainly fully sustains the conclusion to which I have arrived as to the use of these treadles in those rakes.   It is claimed on the part of the complainants that the old rakes have been altered over; that new treadles have been put into them; but there is nothing in the appearance of the mechanisms or of the treadles, as they stand now before the .court, to show that there has been any change.   All the parts seem to be of an age—they all bear the same marks of exposure.   There is no evidence of any cutting, or change by substituting the treadles they now have for other devices.   Indeed, the whole appearance of these old rakes satisfies me that they now show their parts as they were originally constructed.

I have therefore come finally and firmly to the conclusion that these treadles were old and common property at the time this patent was issued.   Perhaps, as I have already said, they were Mr. Whitcomb's invention.   He seems to have been the leading genius in that locality in reference to this class of farming implements, and it is likely and probable that these improvements were his.   But he abandoned them to the public.   He allowed his neighbors to use them. They were public property, and sold on the market long before the expiration of two years prior to the application for this patent, and they were not mere experimental uses.   These rakes were made and sold in the market for use in the fields, not merely for the purpose of seeing whether they would work or not.

So that, from all these considerations, I come to the conclusion that the claims of this patent involved in this suit must be held to be void, and this bill must be dismissed for want of equity.