## MANNING & Another *v.* CAPE ANN ISINGLASS & GLUE COMPANY & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

Decided May 7th, 1883.

*Patent.*          ·   i

The facts in this case show a public use of the alleged invention for more than four years prior to the date of the patent.

This was a suit brought by the appellants, John J. Manning and Caleb J. Norwood, to restrain the infringement by the appellees of letters patent dated January 7th, 1873, issued to the appellants and W. N. Manning, as assignees of the inventor, James Manning. By the subsequent assignment of W. N. Manning the appellants became vested with the title to the entire patent.

It is well known that the swimming-bladders or sounds of certain fishes are largely composed of that variety of gelatin called isinglass. The sounds are usually found in the market in a dry and hard state. They are manufactured into isinglass by a mechanical operation which consists in passing the macerated sounds successively between several sets of rollers, the first set kneading the sounds into a homogeneous sheet, and the subsequent sets squeezing and elongating the sheets into the ribbons of isinglass known to commerce. The invention covered by the patent sued on was for "an improvement in the manufacture of isinglass from fish sounds."

The specification of the patent declared as follows:

"In the manufacture of ribbon isinglass from fish sounds it is customary to feed the softened and moist or macerated sounds to and between feed and compressing rollers, by which the viscid substance is compressed and joined and formed into a continuous sheet. Notwithstanding the constant application of cold water into the rolls, the substance adheres tenaciously to the roll and

accumulates thereupon, and has to be cut away therefrom, an operation which is very slow and laborious and productive of imperfect sheets.

"My invention is designed to obviate the return of the adhering gelatinous substance to the action of the rolls before it is stripped therefrom, and to so strip it that the rolls may work continuously or without stoppage, the ribbon, as it is stopped, being again fed or guided by the operator into and between the rolls until sufficiently reduced or elongated for removal or for the action of other rolls set nearer together to produce a thinner ribbon.

"To effect this result I place at the side of each roll a scraper extending the whole length of the roll, and having an edge set up to the roll, so that the roll shall run just clear of it, which scraper or cleaner strips from the whole surface of the roll the adhering gelatine in the form of a sheet.

"The invention consists in this method of passing the isinglass between hollow rolls, cooled by water thrown into the rolls, and then stripping the gelatinous matter from the rollers and returning it to the hopper to be again treated, the rollers being adjustable."

The claim was as follows :

"The herein described method of converting isinglass into sheets of any desired thickness by running it between hollow rolls into which cold water is thrown to cool the compressing surfaces, such rolls being preferably made adjustable to graduate the degree of compression, and the adhering sheets being removed from the rolls by stationary scrapers or clearers and returned to the hopper as required."

One of the defences set up in answer and relied on was that the improvement described in the patent had been in public use for more than two years before the patent was applied for.

The circuit court dismissed the bill on that ground. From its decree this appeal was prosecuted by the complainants.

*Mr. Thomas William Clarke* for appellants.
*Mr. George L. Roberts* for appellees.

Mr. Justice Woods delivered the opinion of the court.

We think that the defence, that the improvement described in the patent had been in public use for more than two years prior to the application therefor, is established by the testimony.

The appellants contend that the patent covers an improvement in the process of making isinglass. It is not contended that the patent covers the rolls between which the fish-sounds are passed, or the keeping of the rolls cool by making them hollow and injecting a stream of cold water into the cavity, nor the automatic scrapers, but in the use of automatic scrapers applied to such rolls to prevent the isinglass from being carried through the rolls a second time without aeration.

The testimony shows that, as early as the year 1860, James Manning, the inventor, was engaged in the manufacture of isinglass at Ipswich, Mass., in copartnership with his brother-in-law, Caleb Norwood, under the same of Norwood & Manning. In that year Oliver C. Smith, a machinist at Salem, constructed for the firm a machine containing adjustable hollow water-cooled rolls, with stationary scrapers, substantially such as are described in the patent, for converting isinglass into sheets in the manner therein set forth. The use of this machine was continued down to the year 1867, when the firm of Norwood & Manning was dissolved. In the division of the assets of the firm between the partners, the machine with the scraper, made by Smith, fell to Norwood. He took into the business with him as a partner his son, Caleb J. Norwood, and continued it in the same factory from 1867 to 1870, using the machine with the stationary scraper which had been made by Smith.

James Manning, after the dissolution of the firm of Norwood & Manning, established an isinglass factory at Rockport, Mass., and procured to be constructed two machines similar to that disclosed in the patent. With this factory and machinery he set up in business his two sons, John J. Manning and William N. Manning, and they carried on the business of manufacturing isinglass, under the name of J. J. Manning & Brother, from the year 1868 until the testimony in this case was taken in 1877, using the two machines with scrapers above mentioned. James Manning, the inventor, had no interest in the business carried

on by Norwood and his son after the dissolution of the firm of Norwood and Manning in 1867, nor in the business of J. J. Manning & Brother, carried on from 1868 until after the issue of the patent.

Some attempt is made to show that the use of the machines in the factory of Caleb Norwood, from 1867 to 1870, was a secret and not a public use. But we think the testimony shows a use open to the public generally. But whether this be so or not is immaterial, for Norwood and his son were allowed by the inventor the unrestricted use of the patent during the period mentioned, without injunction of secrecy or other condition. This is sufficient to constitute a public use. *Egbert* v. *Lippman*, 104 U. S. 333.

The decided weight of the evidence shows that there was also a public use of the invention in the factories of J. J. Manning & Brother for more than four years prior to the application for the patent, namely, from 1868 to 1873.

It is also made clear by the testimony, not only that the machinery, but the process used by Norwood & Manning from 1860 to 1867, by Norwood & Son from 1867 to 1870, and by J. J. Manning & Brother from 1868 to 1873, and after that year was substantially the same as that described in the patent. During all these years there was no material change, either in the machinery or the process. The use of the machinery and process was not, therefore, an experimental use. These conclusions of fact are fatal to the complainant's case.

It is the policy of the patent laws to forbid the issue of a patent for an invention which has been in public use before the application therefor. The statute of 1836, 5 Stat. 117, section 6, did not allow the issue of a patent when the invention had been in public use or on sale for any period, however short, with the consent or allowance of the inventor; and the statute of 1870, 16 Stat. 201, section 24; Rev. Stat. § 4886, does not allow the issue, when the invention had been in public use for more than two years prior to the application, either with or without the consent or allowance of the inventor. Under either of these statutes the patent relied on in this case was improvidently issued, for there was a public use, with the con-

sent of the inventor, for more than two years prior to the application. The patent is threefore void. *McClurg* v. *Kingsland*, 1 How. 202; *Egbert* v. *Lippman, ubi supra; Consolidated Fruit Jar Co.* v. *Wright,* 94 U. S. 92; *Worley* v. *Tobacco Co.*, 104 U. S. 340.

*The decree of the circuit court must be affirmed.*