## CLARK POMACE-HOLDER CO. v. FERGUSON.

*(Circuit Court, N. D. New York. 1883.)*

**1. PATENTS—COMBINATION OF OLD ELEMENTS.**

To constitute a valid combination, where the elements are old, all the component parts thereof must so enter into the combination that each qualifies the other, and a new result is produced by the combined action of all the component parts.

**2. SAME—INVENTION OF NEW PLACE FOR OLD THING NOT PATENTABLE.**

To authorize a patent the law requires the invention of a new thing. It is not satisfied by inventing a new place for an old thing without change of result.

**3. SAME—PUBLIC USE.**

Proof of but one instance of public use more than two years prior to the application for a patent is sufficient to defeat it.

**4. SAME—LETTERS PATENT INVALID.**

Letters patent issued to John Clark on the sixth day of February, 1877, for an alleged improvement in cheese-formers for cider-presses are invalid, as the combination, if a valid combination, was not patentable, and was in public use more than two years before the application.

In Equity.

*Walter E. Ward* and *J. Van Santvoord,* for complainant.

*William H. King,* for defendant.

COXE, J. This is an equity action for infringement of letters patent issued to John Clark on the sixth day of February, 1877, for an alleged improvement in cheese-formers for cider-presses. The patent was subsequently assigned to the complainant. The patentee in the specification declares:

"The object I have in view is in laying up a 'cheese' for the cider-press, where each layer is folded up in a cloth, to secure uniformity of thickness of all the layers in the mass or cheese, and thus secure uniform pressure on its entire area, and to avoid all tendency to break the pomace frames or racks. To this end it consists in the employment of a guide-frame, in combination with extended pomace-racks, as more fully hereinafter set forth."

The claim is in the following words:

"The guide-frame, D, in combination with an extended pomace-rack, and a cloth to inclose a layer of pomace therein, substantially as described."

In the *Cider-makers' Manual,* published in 1869 by J. S. Buell, the author, after stating the advantages to be derived from the substitution of cloths for straw, as used in the old method of cider-making, proceeds to describe, at page 47, a plan which suggested itself to him in the fall of 1868, and which, in its essential particulars, is similar to the process described in the patent. After explaining how the frames are made, by placing lath or thin boards near together and nailing to them similar boards placed at right angles, he proceeds in these words:

"These frames are designated and known as pomace-frames, and are used in laying up a cheese as follows: First place upon the platform of the press one of these frames, seeing that it covers the entire inner surface of the curb.

Place upon the top of this frame the cloth or cloths, at the same time covering the inside of the rack with one thickness of cloth, laying the lower ends over the frame, and then fill in with pomace to the uniform depth of from three to five inches. Then lay on cloths, and upon the cloths place another frame, upon which lay other cloths, and add thereto five inches of pomace, thus building up successive layers of frames, cloths, pomace; cloths, frames; cloths, pomace,—alternating in like manner until the curb is filled, and then proceed as before described. The frames separate the cloths and allow the free passage of the cider from all parts of the cheese through and between them, while the openings between the slats of the frames act as conduits for the liquid to the outside receptacle."

It also appears by other evidence that two years and more before the application for this patent, cloths had been used in a precisely similar manner to the one therein described. Racks or frames had been used; so had guide-frames. This is not seriously disputed by the complainant's counsel, but they contend that the combination is new; that a guide-frame, in combination with an extended pomace-rack and a cloth to inclose the layer of pomace, was not used or known before.

Without pausing to consider the defenses of a purely technical character, relating to defects in the drawings, omissions in the affidavit, and the like, it will be more satisfactory to examine, in the light of the recent adjudications, the three questions which seem to be of paramount importance. *First*, does the use of the various elements claimed in the patent constitute a valid combination? *second*, has the patentee discovered anything that rises to the dignity of invention? and, *third*, was the precise process described in the patent known and used two years and more prior to the application?

The law, as applicable to patents of this character, would seem to be as follows: All the component parts must so enter into a combination of old elements that each qualifies every other. The result must be the product of the combination, which is patentable provided something new and useful is produced. If the elements of the combination act independently of each other, or if one element acts independently of the others, it is an aggregation of parts, and not entitled to protection as a combination. It is indispensable that a new and useful result should be produced, either by the invention of a new thing or a new combination of old things. Unless this is the case, even though the elements act reciprocally and in combination, the requirements of the law are not satisfied. The combination must be new; so must the result. *Hailes* v. *Van Wormer*, 20 Wall. 353; *Pickering* v. *McCullough*, 104 U. S. 310; *Reckendorfer* v. *Faber*, 92 U. S. 347; *Packing Co. Cases*, 105 U. S. 566; *Perry* v. *Co-operative Co.* 12 FED. REP. 436; *Welling* v. *Crane*, 14 FED. REP. 571; *Slawson* v. *Railroad Co.* 4 FED. REP. 531; *Stephenson* v. *Railroad Co.* 14 FED. REP. 457; *Manuf'g Co.* v. *Myers*, 23 O. G. 1443; [S. C. 15 FED. REP. 237;] *Doubleday* v. *Roess*, 11 FED. REP. 737.

Turning now to the patent in controversy, it may be said at the outset that the presumption of law, where a patent is claimed for a combination simply, is, that all the separate elements are old. But in addition to the presumption it is, as above stated, practically conceded that all the elements entering into this alleged combination are old.

The proof sufficiently establishes the fact that cloths and racks had been used before; that they had been used both separately and in combination; and further, that they had been used in combination with some device which, if not technically a "guide-frame," enabled the manufacturer to produce a layer of pomace "of a uniform depth of from three to five inches." So it would seem that the only distinction that can be suggested between the old method and the method described in the patent is in the extended racks,—in the use of a guide-frame a few inches smaller instead of a few inches larger than the racks. The result sought and obtained in both cases was the expression of the juice from the pomace. Whether the new method possesses advantages over the old is left somewhat to conjecture by the proof; perhaps the presumption that it does possess such advantages is a legitimate one arising from the patent itself.

1. It is sometimes extremely difficult to distinguish between a meritorious combination and a mere aggregation of distinct parts, and the case at bar furnishes a new illustration of this fact.

How the use of the guide-frame causes any co-action or combination between it and the racks and cloths, it is not quite easy to perceive. No new result is produced by its use. The press operates in the old way: the cheese is pressed down, and the juice forced out as before. To what that is new or useful does the guide-frame contribute in connection with the other devices? In other words, suppose this patentee to be the first inventor of racks and cloths, could he be deprived of the benefits of his discovery in its simplest and most practical form, by another person who should obtain a patent for such a combination as is described in the specification? Would it not be immediately insisted that the latter was simply using the old invention, with the addition of a very simple and well-known mechanical contrivance, which added to the old combination no new co-operative element? It would seem, at least, doubtful whether the guide-frame—to any greater extent than the shovel with which the pomace is placed upon the racks, or the instrument with which it is " 'struck' level with the girts of the frame"—acts in combination with the racks and cloths. The guide-frame has been removed, and has ceased to perform any function before the racks and cloths begin to act reciprocally; it does not act on them or they on it. If straw or a solid platform were under the guide-frame instead of the racks, it would perform the same office.

To constitute a valid combination there must be a new result pro-

duced by the combined action of all the component parts. What is that result in this case? It may, perhaps, be admitted that the guide-frame operates more conveniently than the old devices; but something more than this is necessary to sustain a patent for a combination.

2. Assuming for the moment that there is here what the law recognizes as a combination—viz., such a union of separate and distinct parts that each operates upon and with the others, producing a new and useful result by their united action—the next question to be considered is, has the patentee invented anything worthy of protection? Before this patent, cider-makers had an undoubted right to use racks and cloths in combination or alone; and they had also a right to use some device by which the pomace could be placed on the rack in layers of uniform thickness. Any man of ordinary mechanical ingenuity, who wished to confine a yielding substance within prescribed limits, would almost certainly make a frame of the desired size. Clark did this and only this. He nailed four boards of equal length together at the corners, in the form of a hollow square, and laid it on the rack. Why is there any more of invention in this than the placing of the window, in the stove case, or the mirror, in the car case? What instrumentality does the patentee here use that was not known, and free to every cider-maker, long before the patent? Take away the guide-frame and nothing remains of his invention. Its use, though in a new position, would seem to be a simple mechanical device, requiring only ordinary skill and judgment, and not amounting to invention. Furnish any practical cider-maker with cloths and racks, direct him to place the pomace on the racks in a uniform and symmetrical manner, and it would immediately occur to him to do just what the patentee here did.

To adopt the sententious language of the court in *Stephenson* v. *Railroad Co.*, *supra*, it may be said: "To authorize a patent the law requires the invention of a new thing. It is not satisfied by inventing a new place for an old thing without change of result."

3. But it is insisted that the precise combination described in the patent was in use more than two years before the application. The complainant does not seriously dispute that it was used in the fall of 1874, but argues that its use was subsequent to September 11th, the application being filed September 11, 1876.

The undisputed evidence shows that it was used for a long time prior to the application, and in some instances the complainant is forced to admit that the delay in applying for a patent brought the patentee very close to the two-years' limitation. A number of witnesses, who are unimpeached, swear to the use of the combination in 1873, and even before that year. It is true that several persons were called by the complainant who testify that they heard nothing of its use, though living in the immediate neighborhood. It is also true that some of defendant's witnesses are contradicted and other-

wise discredited. Bearing in mind, however, the rule that proof of but one instance of public use more than two years prior to the application for the patent is sufficient to defeat it, the court would hardly be justified in disregarding the testimony of the numerous witnesses who positively affirm that they used the rack, cloths, and frame in 1871-2-3-4. *Egbert* v. *Lippmann,* 104 U. S. 333; *Manning* v. *Cape Ann, etc., Co.* 23 O. G. 2413; [S. C. 2 Sup. Ct. Rep. 860.]

As indicative of the patentee's own views upon the novelty and patentability of the alleged invention, it appears that he visited Syracuse in the summer of 1874 and explained his system to a member of the Boomer & Boschert Press Company—Mr. Boomer.

In September following, in a periodical issued by that company and widely circulated, there appeared a full and complete description of the system described in the patent. Under the heading, "The best system yet devised," is the following statement:

"It is to last year's experience that we are indebted for the most sensible plans for laying up a cheese,—a plan which we predict will be speedily adopted by all wide-awake cider-makers, although, perhaps, it has not yet been sufficiently tried to establish its merits; yet, *as is has been successfully put into use by several parties,* there seems to be no question as to its feasibility."

Then follows the description. This certainly is a very significant piece of evidence, in view of the fact that Mr. Boomer, who admits that he probably wrote the article, is now vice-president of the Clark Pomace-holder Company, the complainant in this action, his relations with the patentee being of an intimate and confidential character.

Upon the whole evidence it is thought that the patent cannot be sustained. The bill is, therefore, dismissed.