## BREWSTER *et al.* *v.* SHULER.

*(Circuit Court, N. D. New York.* February 23, 1889

**1. PATENTS FOR INVENTIONS—REISSUE—ENLARGEMENT OF CLAIM.**

In the original patent of May 27, 1873, to Thomas H Wood, for an improvement in carriage springs, the invention was stated to have for its object to combine in a wagon supported on single transverse springs and side-bars the advantage of elasticity, double elliptic transverse springs, and of the deep setting of the body previously obtained by using single springs. The claim was for a frame consisting of longitudinal side-bars, downwardly bowed springs, and upwardly bowed middle springs, constructed, arranged, and applied as and for the purpose described. The reissued letters patent granted August 18, 1874, state that the object is to improve the manner of connecting the bodies of light carriages with the side-bars whereby they are supported, and that the invention consists in interposing a pair of semi-elliptic springs between the side-bars and wagon body. The claim is for the semi-elliptic springs interposed between the side-bars and the wagon body, all combined substantially as specified. *Held*, that the original being for a combination of half springs with other half springs in reverse, and the reissue being for a combination which omits the half springs in reverse, the reissue is void.

**2. SAME.**

The reissue is void also because there is no defective or insufficient specification and no inadvertent mistake in the statement of the claim of the original.

**3. SAME—ANTICIPATION.**

Semi-elliptic scroll-ended springs having been previously interposed between the side-bars and the body of the Robert Pierce buggy, and there being nothing to indicate that a spring other than one having a scroll end was an element of the claim, the patent is void for prior public use, though the drawings show springs without scroll ends.

In Equity. Bill to restrain the infringement of a patent.

B. F. *Thurston* and *Livingston Gifford*, for complainants.

*M. L. Stover*, (*Witter & Kenyon* and *Causten Browne*, of counsel,) for defendant.

WALLACE, J. This suit is brought to restrain infringement of reissued letters patent granted August 18, 1874, to Thomas H. Wood, for an "improvement in carriage springs." The defendant relies upon the invalidity of the patent as a reissue of the original, and upon prior public use by others of the subject of the invention, among other defenses to the suit. The original patent to Wood was granted May 27, 1873. The invention is described therein as follows:

"This invention relates to an improved arrangement of transverse springs on light wagons, and has for its object to combine, in a wagon supported on single transverse springs and side-bars, the advantage of elasticity, double elliptic transverse springs, and of the deep setting of the body obtained at present by using the single springs. Light carriages supported on double elliptic springs raise the bodies too high for convenience, and are, moreover, more expensive than those having single springs. On the other side, such carriages as are at present supported on single transverse springs, whose ends connect with side-bars rigidly secured to the wagon bodies, are not sufficiently elastic and yielding to suit the rapid motion to which they are frequently subjected. The invention consists in the improvement of light vehicles, as hereinafter described and pointed out in the claim. In the accompanying drawing, the letter A represents the body of a light carriage of suitable style. B and C are the axles of the carriage, and D, D, the wheels. Upon the axles are fastened the middle portions of transverse springs, E, E, whose ends are secured to side-bars, F, F. These side-bars are made of hickory wood or other material, and aid, with whatever elasticity they may possess, in making the support of the body, A, yielding. To the under side of the carriage body, A, are secured transverse springs, G, G, whose ends connect, by suitable couplings, with the side-bars, F, F, as is clearly shown in the drawing. The springs, G, G, and E, E, can be made of metal, or wood, or other material, and are semi-elliptic or flat springs, in contradistinction to the full elliptic spring heretofore used as direct supports for carriage bodies on their axles."

The claim of the original patent is as follows:

"A frame consisting of the longitudinal side-bars, F, F, downwardly bowed springs, E, E, and upwardly bowed middle springs, G, G, constructed, arranged, and applied as and for the purpose described."

The description in the reissued patent is as follows:

"This invention has for its object to improve the manner of connecting the bodies of light carriages with the side-bars, whereby they are supported, and consists in interposing a pair of semi-elliptic springs between said side-bars and the wagon body. In the accompanying drawing, the letter A represents the body of a light carriage of suitable style. B and C are the axles of the carriage, and D, D, the wheels. The axles are connected, by springs, E, E, or otherwise, with the side-bars, F, F. These side-bars are made of hickory wood or other material. To the under side of the carriage body, A, are secured transverse springs, G, G, whose ends connect, by suitable couplings, with the side-bars, F, F, as is clearly shown in the drawing. These springs, G, G, can be made of metal or other material, and are semi-elliptic or flat springs, in contradistinction to the full elliptic springs heretofore used, as direct supports for carriage bodies on their axles."

The claim of the reissue is:

"The semi-elliptic springs, G, G, interposed between the side-bars, F, F, and the wagon body, all combined substantially as specified."

It is obvious that the invention of the patentee, as explained in the original patent, consisted in altering a side-bar buggy having downwardly curved transverse springs over the axle in which the ends of the side-bars rest on the ends of the springs, by putting in upwardly curved springs transversely between the side-bars and the body of the buggy. The conception and aim of the patentee was to employ additional half elliptic springs in a side-bar buggy having half elliptic springs, so arranged in reference to each other that the body would be practically mounted on full elliptic springs for purposes of elasticity, and on half elliptic springs for purposes of elevation above the axle. The description fully and clearly, without ambiguity or obscurity, sets forth the exact invention made by the patentee, and the claim fully and precisely specifies it; and from both it is perfectly evident what invention the patentee intended to describe and sought to secure. So ample and exact are the specification and claim that it cannot be doubted he knew accurately the scope and limitations of his invention, and intended to describe and claim it as nothing more or less than an improvement upon a specific type of side-bar buggies, which consisted in interposing supplementary half elliptic springs between the body and the side-bars to re-enforce and co-operate with the half elliptic springs theretofore employed between the side-bars and the axles in the existing buggy. What the patentee did was to put two springs adapted to do that work into a buggy of that type. He might have put transverse semi-elliptic springs between the body and the side-bars of a buggy of a different type; but he did not do it, or think of doing it. Apparently he subsequently discovered that it would be desirable to do this, and concluded to get a patent for doing it; and he was probably advised that such a patent would give him a larger monopoly than he had secured originally, and would enable him to hold as infringers all those who should use the transverse semi-elliptic springs between the side-bars and the body of a buggy, whether in a buggy with or without semi-elliptic springs or any springs between the side-bar and the axle. The reissued patent is for an invention which apparently did not exist in the mind of the patentee when the original was obtained, and which also is of more doubtful inventive novelty than that in the original. The original is for a combination of half springs with other half springs in reverse, in a side-bar buggy, in which the parts co-operate to produce a given result. The reissue is for a combination of which half springs in reverse are not a part, and from which the essential characteristics of the original invention are eliminated. The use of the combination of parts claimed in the reissue would not be an infringement of the original patent. It must be held that the reissue is void, not only because it is for an invention not disclosed or suggested in the original, but also because, as in the case of *Coon* v. *Wilson*, 113 U. S. 268, 5 Sup. Ct. Rep. 537, there was no defective or insufficient specification, and no mistake inadvertently committed in the wording of the claim of the original.

The defense of prior public use, which rests on the use of the springs

in the Robert Pierce buggy, is fully established, and is fatal to the validity of the patent. The fact of the use of semi-elliptic springs in that buggy, interposed between the side-bars and the body, at a date sufficiently early to defeat the patent, is not contested; but it is contended for the complainants that these springs were not the semi-elliptic springs of the patent. They were semi-elliptic springs of the class known as "scroll-ended" springs. This was a well-known class, used in carriages, and sold by dealers as semi-elliptic springs, previously to the date of the patent, as sufficiently appears by reference to the patent to George Groot, of July 13, 1869, for an improvement in carriage springs, without reference to the other testimony or exhibits in the case. That patent relates to the fastening of semi-elliptic springs transversely under the body of the carriage, to side springs, by means of saddle-clips. The drawings show a scroll-ended half elliptic spring, substantially such as was used in the Robert Pierce buggy, and the specification points out that the saddle-clips are to be adjusted according as the ends of the semi-elliptic springs "are made with or without scrolls." Another class of semi-elliptic springs was without scrolls at the ends, and it is contended for the complainant that it is to this class, and this class only, that the claim of the patent relates. The drawings in the patent show springs of this class. It appears by the testimony that the object of scrolling the ends of half springs is to get a somewhat greater length of spring between bearings a given distance apart, and thereby somewhat more elasticity and motion; and that the use of square-ended or scroll-ended springs is dictated by the degree of elasticity desired in a particular carriage spring. It is obvious, however, that the degree of elasticity depends largely upon the amount of material used in the spring, and that a scroll-ended spring may be practically as stiff as one without a scroll end, and one without a scroll end may be practically as elastic as one with a scroll-end. It is probably true that, as between springs of the two classes, when each has the same degree of elasticity as the other, the scroll-ended spring would lend a freer lateral movement to a carriage or buggy body than the other; and an ingenious argument has been advanced by counsel and by the experts for the complainant to show that in the class of carriages to which the patent relates it is desirable that there be practically no sidewise movement to the carriage body. If there were anything in the specification to suggest this, the somewhat shadowy difference of function between the two springs might be apprehended and emphasized to denote that one should not be treated as the equivalent of the other. But it could be urged with equal force that the semi-elliptic spring of the claim is one of either class, and that the use of scroll-ended springs, when interposed between the side-bars and the wagon body, would be an infringement of the claim. Indeed, in a former suit brought upon this patent, the alleged infringing springs were scroll-ended half elliptic springs, but the ends did not extend appreciably beyond the outside line of the side-bars; and the complainant's expert gives it as his opinion that the use of such scroll-ended springs between the side-bars of the wagon body would be an infringement of the patent.

In the absence of any language to indicate that a semi-elliptic spring of a special form is an element of the claim, it must be held that the claim specifies one of any well-known form adapted to be interposed between the side-bars and the wagon body. Consequently such springs as were used in the Robert Pierce buggy are the springs of the patent, and the defense of prior public use is established. The bill is dismissed, with costs.