BRADLEY v. ECCLES.

(Circuit Court, N. D. New York. June 12, 1905.)

No. 6,961.

1. PATENTS—VALIDITY—PRIOR PUBLIC USE.
Under Rev. St. § 4886 [U. S. Comp. St. 1901, p. 3382], the public use of an invention for more than two years before the application for a patent therefor, although in but a single instance, will defeat the right to a patent.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 103.]

2. SAME—PUBLIC OR EXPERIMENTAL USE.
If an inventor passes his invention into the hands of different persons to use and test as to the usefulness of the device before application for a patent, such use by them must be restricted to experimental use; and if they are permitted to use the device publicly as a nonpatented article, and it is either sold or given away to even a few persons, their use of it will be a prior public use which may deprive the inventor of his right to a patent.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 95, 98, 103.]

3. SAME—THILL-COUPLING.
The Hannan reissued patent, No. 11,260 (original No. 456,117), for improvements in thill-couplings, while it discloses patentable invention, is

void for prior public use; it being shown to the satisfaction of the court, beyond a reasonable doubt, that the inventor either knowingly and intentionally or negligently permitted the public use of the invention for more than two years prior to his application for a patent.

Bill of complaint in equity to perpetually enjoin alleged infringement of reissued letters patent No. 11,260, granted to William Henry Hannan, assignor to William Herbert Hannan, dated August 16, 1892, for improvements in thill-couplings, and an accounting. The original letters patent, No. 456,117, bore date July 14, 1891. Application therefor was filed November 17, 1890. Application for reissue was filed September 2, 1891. Such reissued letters patent were duly assigned to complainant.

See 120 Fed. 947.

Howard P. Denison, for complainant.
William A. Megrath, for defendant.

RAY, District Judge. The complainant alleges infringement of claims 1 and 2 of reissued letters patent No. 11,260, above referred to, and which claims read as follows:

"(1) The combination with the draft-eye, composed of a fixed section and a movable section, of a spring-arm secured at one end and free at the other, a cam-lever pivoted to the free end of said spring-arm, and a tie attached to the cam-lever outside of its fulcrum, and connecting the cam-lever with the movable section of the draft-eye, whereby the spring-arm exerts a constant pressure upon the movable section, and also holds the cam-lever yieldingly in a locked position, substantially as set forth.

"(2) The combination, with the axle, of a draft-eye composed of a forwardly projecting fixed section and a movable section hinged to the front end of the fixed section, a spring-arm secured to the axle, and projecting forwardly therefrom, a cam-lever hinged to the free front end of the spring-arm, and a tie attached to the cam-lever outside of its fulcrum, and connecting the cam-lever with the hinged section of the draft-eye, substantially as set forth."

The defendant alleges two defenses: (1) That the thill-coupling, etc., covered by the said claims is not, in view of the prior art, a patentable invention; and (2) that such coupling was in public use and on sale in the United States for more than two years prior to November 17, 1890, the date of the filing of the application for the original letters patent.

The elements of claim 1 are (1) a draft-eye composed of a fixed section and a movable section; (2) a spring-arm secured at one end and free at the other; (3) a cam-lever pivoted at the free end of such spring-arm; and (4) a tie attached to the cam-lever outside its fulcrum, and connecting the cam-lever with the movable section of the draft-eye. There is no disagreement as to the elements of claim 1. Nor is there any real difference between the parties as to the elements of claim 2. Defendant says it contains the following:

"(1) The axle; (2) a draft-eye composed of a forwardly projecting fixed section and (3) a movable section hinged to the front end of the fixed section; (4) a spring-arm secured to the axle, and projecting forwardly therefrom; (5) a cam-lever hinged to the free front end of the spring-arm; (6) a tie (bail) attached to the cam-lever outside of its fulcrum, and connecting the cam-lever with the hinged section of the draft-eye."

In enumerating the elements, defendant adds the axle, and divides the draft-eye into two elements—a forwardly projecting fixed section, and a movable section hinged to the front end of such fixed section.

The specifications state:

"This invention is a specific improvement of the thill-coupling for which I have obtained United States letters patent No. 341,235, dated May 4, 1886. The object of my present invention is to provide the thill-coupling with a locking device which shall be more secure and reliable in its operation, and capable of compensating for the wear and abrasion of the coupling-pin and draft-eye; and, to that end, the invention consists in the improved construction and combination of parts, as hereinafter more fully described and set forth in the claims."

Complainant admits and states in his brief:

"Upon comparing this claim [2] with claim 1, it is noted that the only difference is that it specifies 'a forwardly projecting fixed section,' and also 'spring-arm secured to the axle, and projecting forwardly therefrom.'"

The whole thill-coupling made and sold by the defendant is a substantial copy or duplicate of the complainant's coupling; the only difference of note being that while the complainant attaches the spring-arm to the rear part or end of the fixed section of the draft-eye (being that part called the 'clip-tie,' where it comes against the axle, so that this end of the spring-arm is fixed between the back end of the draft-eye and the axle, and so held in place), the defendant attaches this fixed end of the spring-arm to the underside of the draft-eye at a point beneath the place where the thill-iron is embraced within the jaw of the draft-eye formed by the shutting down of the movable end of this eye upon the fixed end thereof. Attached in either place, so as to be held firmly in position, this end of the spring maintains a fixed relation to the axle, and at right angles therewith, which is all that is necessary or intended. Attached in either place, the idea of means, means and mechanical working, and result attained· are the same.

I have carefully examined the evidence and prior patents put in evidence to show the prior art, and am satisfied that the coupling in question, in view of the prior art, discloses patentable invention. It is true that there was a locking of the parts in the prior art, but the devices for locking were different, and the construction of the coupling, as a whole, was quite different. In the field to which this patent in suit relates, the improvement is useful and important. The defendant's expert said, in substance, speaking of the patents of the prior art in evidence:

"I do not find a spring-arm secured at one end and free at the other, a cam-lever pivoted to the free end of said spring-arm, and a bail attached to the cam-lever outside of its fulcrum, and connecting the cam-lever with the movable section of the draft-eye; but I do find a construction by which a constant pressure on the bail is secured, and a construction in which the cam-lever will be held in its closed or locked position."

A careful examination of the patents to which reference is made, viz., Hannan patent, No. 341,235, of May 4, 1886, Miller and Wright patent, No. 376,606, of January 17, 1888, and Miller and Wright patent of August 21, 1888, No. 388,144, and Holden patent of Feb-

138 F.—58

ruary 18, 1890, No. 321,713, satisfies me that anticipation is not shown, and that, in view of such patents, there is patentable invention disclosed in the production of the complainant's device.

Coming to the other defense—that of prior use—I have had more difficulty in arriving at a satisfactory conclusion. It is claimed by the defendant—and much evidence has been given of a more or less satisfactory and conclusive nature tending to show such alleged fact—that the patented thill-coupling described in the patent in suit was in public use more than two years prior to the filing of the application for the patent in question. It is, of course, well settled that, under section 4886 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3382], when a device has been in public use and on sale in the United States for more than two years prior to the filing of the application on which a patent has been granted, the patent will be void. Edgarton v. Furst & Bradley Mfg. Co. (C. C.) 9 Fed. 450; Manning v. Glue Company, 108 U. S. 462, 2 Sup. Ct. 860, 27 L. Ed. 793; Detroit Company v. Lunkenheimer (C. C.) 30 Fed. 190; Andrew v. Hovey, 123 U. S. 267, 8 Sup. Ct. 101, 31 L. Ed. 160; Andrew v. Hovey, 124 U. S. 694, 8 Sup. Ct. 676; 31 L. Ed. 557.

In Manning v. Glue Company, supra, the court said:

"It is the policy of the patent laws to forbid the issue of a patent for an invention which has been in public use before the application therefor. The statute of 1836 (5 Stat. 117, c. 357, § 6) did not allow the issue of a patent when the invention had been in public use or on sale for any period, however short, with the consent or allowance of the inventor; and the statute of 1870 (16 Stat. 201, c. 230, § 24; Rev. St. § 4886 [U. S. Comp. St. 1901, p. 3382]) does not allow the issue when the invention had been in public use for more than two years prior to the application, either with or without the consent or allowance of the inventor. Under either of these statutes the patent relied on in this case was improvidently issued, for there was a public use, with the consent of the inventor, for more than two years prior to the application. The patent is therefore void. McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102; Egbert v. Lippmann, ubi supra; Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68; Worley v. Tobacco Co., 104 U. S. 340, 26 L. Ed. 821."

One well-defined case of prior public use in the United States is all-sufficient. Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; Clark Co. v. Ferguson (C. C.) 17 Fed. 79; Brewster v. Shuler (C. C.) 37 Fed. 785; U. S. Co. v. Edison Co. (C. C.) 51 Fed. 24; Swain v. Holyoke Co., 109 Fed. 154, 48 C. C. A. 265.

In Egbert v. Lippmann, supra, the court said:

"We observe, in the first place, that, to constitute the public use of a patent, it is not necessary that more than one of the patented articles should be publicly used. The use of a great number may tend to strengthen the proof of public use, but one well-defined case of public use is just as effectual to annul the patent as many."

In the case of Clark Co. v. Ferguson, supra, the court said:

"A number of witnesses, who are unimpeached, swear to the use of the combination in 1873, and even before that year. It is true that several persons were called by the complainant who testify that they heard nothing of its use, though living in the immediate neighborhood. It is also true that some of the defendant's witnesses are contradicted and otherwise discredited. Bearing in mind, however, the rule that proof of but one instance of public use more than two years prior to the application for the patent is sufficient

to defeat it, the court would hardly be justified in disregarding the testimony of the numerous witnesses who positively affirm that they used the rack cloths and frame in 1871, 1872, 1873, 1874. Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; Manning v. Glue Co., 108 U. S. 462, 2 Sup. Ct. 860, 27 L. Ed. 793."

It is well to bear in mind always that a certain reasonable degree of experimental use prior to the application for a patent is permitted. However, experimental use should be distinguished from public use. The public should not be permitted by the inventor to use a machine or a device, supposing it to be free to the public, and then subjected to suits for infringements. This will be the result unless the rules as to prior use, as distinguished from experimental use, are defined and maintained. A few cases will illustrate the difference between public use and experimental use: Smith & Griggs Co. v. Sprague, 123 U. S. 249, 8 Sup. Ct. 122, 31 L. Ed. 141; Brush v. Condit, 132 U. S. 39, 10 Sup. Ct. 1, 33 L. Ed. 251; Root v. Third Ave. Co., 146 U. S. 210, 13 Sup. Ct. 100, 36 L. Ed. 946; Smith & Davis Co. v. Mellon, 58 Fed. 705, 7 C. C. A. 439; Swain v. Holyoke Co., 111 Fed. 408, 49 C. C. A. 419; Thompson Co. v. Lorain Co., 117 Fed. 249, 54 C. C. A. 281.

In Brush v. Condit, 132 U. S. 39, 10 Sup. Ct. 1, 33 L. Ed. 251, the Supreme Court declared invalid reissued patent No. 4,718, dated May 20, 1879, to one Brush, for an improvement in electric lamps, and, in so doing, said:

"Where there had been a public use, well-known, practical use in ordinary work, with as much success as was reasonable to expect at that stage in the development of the mechanism belonging to electric-arc lighting, of the exact invention which was subsequently made by the patentee, held, that although only one article like the patented invention was ever made, which was used two and one-half months only, and the invention was then taken from the lamp, and was not afterwards used with carbon pencils, it was an anticipation of the patented device, under the established rules upon the subject."

This defense of prior public use must be established by clear, credible, and satisfactory evidence, and the fact must be established to the satisfaction of the court beyond a reasonable doubt. It is not satisfactory to determine such a question of fact from a printed record, without seeing the witnesses. However, when the evidence is taken and printed, and then submitted to the court for its determination, the court must do the best it can, and pass upon the credibility of the witnesses from the printed record before it. The court will assume that the witness speaks the truth unless there be impeaching testimony, contradictory testimony, inherent improbabilities in the statements, or circumstances surrounding the transaction testified to tending to throw discredit upon the statements made. In this case nearly all of the evidence given by the defendant to establish prior use is uncontradicted, unimpeached, and free from inherent improbabilities. So far as appears, the witnesses are entitled to credit, and speak of transactions within their personal knowledge, in which they had an interest, and whereof they know. In some instances facts were brought out tending to shake the force of the testimony given. This, however, is not true of the evidence taken as a whole. It may be that the inventor had it in

mind that he was allowing an experimental use of his patent, only—. that he had no idea he was giving the invention to the public—but from the evidence I cannot find that the prior use clearly proved by the defendant was experimental in the legal sense, or experimental within the decisions referred to. In my judgment, if the inventor passes the machine or structure covered by the patent into the hands of different persons—say two or more—for them to use and test as to the usefulness, etc., of the device, such use by them must be restricted to experimental use. If such persons and others are permitted to use such structure or device or machine publicly as a nonpatented article, and the article is either sold or given away even to a few persons, such public use will, or at least may, become a prior public use, and deprive the inventor of the benefit of his invention.

In the case now before the court, the court is satisfied that the inventor either knowingly and intentionally or negligently permitted the public use of the alleged invention during a long period of time—more than two years—prior to his application for the patent in suit, and that this defense is established. This court entertains no reasonable doubt on this question, and is compelled to this conclusion, notwithstanding the fact it is satisfied there was patentable invention in the complainant's device, and, if the patent could be sustained, that infringement has been proved.

The defendant is entitled to a decree dismissing the bill of complaint, with costs.