UNITED STATES v. AMERICAN BELL TEL. CO. et al.

(Circuit Court, D. Massachusetts. December 18, 1894.)

No. 341.

1. PATENTS—TWO PATENTS FOR SAME INVENTION — TELEPHONE TRANSMITTER.
    Patent No. 463,569, issued November 17, 1891, to Emile Berliner, as assignor to the American Bell Telephone Company, for combined telegraph and telephone, is for a device for transmitting articulate speech, which is identical with the device for the same purpose covered by patent No. 233,969, issued to Emile Berliner November 2, 1880, for electric telephone, and is void.

2. SAME—CANCELLATION—UNLAWFUL DELAY IN ISSUING.
    In an action by the United States to cancel patent No. 463,569, issued November 17, 1891, to Emile Berliner, as assignor to defendant, for combined telegraph and telephone, it appeared that the application was filed June 4, 1877; that defendant had ample means to prosecute it; that it then owned a patent which covered the art of electrical transmission of articulate speech, which expired in 1893; that in 1882 defendant was notified that, "as at present advised, it is believed that the claims presented may be allowed," but final action must be suspended in view of probable interferences with other pending applications; that the application with which interference was anticipated was filed July 26, 1880; that there was abundant evidence on file in the patent office showing public use of the device as early as July 26, 1878, and the latter applicant declined to take evidence in contradiction of such public use; that in March, 1888, defendant's application was suspended until May 1, 1888, on the ground of expected interference, and "for the purpose of awaiting the determination of the telephone case in the supreme court"; that defendant acquiesced in a "general understanding" that the decision of its application should await the decision in such case; that it was evident that the claimant in such case was not entitled to a patent, because of prior use of his invention; that the case might not be decided for many years, and, when decided, would not necessarily throw any light on the question of defendant's right to a patent; that the case was decided in March, 1888; and that in 1886 defendant's solicitor wrote it that he was working the "cases along quietly," and thought they would be granted by the examiner without interferences or appeals. Held, that the issue of such patent was unlawfully delayed by defendant's fault, for a fraudulent purpose, and that the patent should be canceled.

Bill by the United States against the American Bell Telephone Company and others, to cancel certain letters patent. Decree for plaintiffs.

The Attorney General, the United States Attorney, Causten Browne, and Robert S. Taylor, for the United States.

William G. Russell, James J. Storrow, William W. Swan, and Frederick P. Fish, for defendants.

CARPENTER, District Judge. This is a bill in equity praying the repeal of letters patent No. 463,569, issued November 17, 1891, to Emile Berliner, as assignor to the American Bell Telephone Company, for combined telegraph and telephone. The first ground of the bill to which I shall refer is that the patent is void as being beyond the power of the commissioner to issue, in view of the issue of a former patent, No. 233,969, issued November 2, 1880, to Emile Berliner, for electric telephone. The patent of 1891 is for a transmitter for a speaking telephone. The fourth claim of the patent of 1880 is as follows:

"(4) A system of two or more telephone instruments in electrical connection with each other, each consisting of two or more poles of an electrical circuit in contact one with the other, either or both poles of each instrument being connected with a vibratory plate, so that any vibration which is made at one contact is reproduced at the other, substantially as set forth."

This patent is, therefore, for the "system" or combination of a transmitter and a receiver for a speaking telephone. The whole apparatus is shown in the drawings of both patents, and is identically the same in both. The transmitter and the receiver are identical in form and differ in function according as they are placed at the transmitting or at the receiving end of the telephone wire. It therefore appears that one of the functions of the device shown in the patent of 1880, namely, the function of transmitting articulate speech, is identical with the sole object or function of the device covered by the patent of 1891, and that the device for effecting the transmission is identical in both patents. The patent, therefore, seems to me to be void, and beyond the power of the commissioner to issue. Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310.

The second ground of the bill is that the issue of the patent was unlawfully delayed through the fault of the respondents. The respondent company were the owners of a patent previously granted to Alexander Graham Bell, which covered the art of electrical transmission of articulate speech. The device of Berliner, as both parties in this case agree, covers the only commercially practicable and useful method at present known for effecting such transmission. In this state of facts, the claim of the complainant under this bill is fully and briefly stated by counsel in the following words:

"The proposition is that the Bell Company intentionally delayed the prosecution of the Berliner application and the issue of the Berliner patent for the purpose and with the result of prolonging their control of the art of telephony, which would cease with the expiration of the Bell patent in 1893; and that they did this by submitting to delays on the part of the officers of

the patent office, which delays they, the Bell Company, had it in their power to prevent, and refrained from preventing, for an unlawful purpose. This conduct is alleged to constitute a fraud practiced upon the public through the commissioner of patents and his assistants. And it is claimed that the patent so obtained by such fraud may be and should be annulled by the decree of the court, on the authority of U. S. v. American Bell Tel. Co., 128 U. S. 315, 9 Sup. Ct. 90, because there is no substantial difference between a fraud practiced upon the commissioner as an agent of the public and a fraud practiced upon the public with the commissioner's connivance or acquiescence."

The application for the patent was filed June 4, 1877, and the patent was issued November 17, 1891. The patent to Bell expired in March, 1893. The device covered by the patent in suit had been in public use by the respondent corporation since the year 1878. The respondent corporation was of ample means to prosecute the application. The result of any delay which might take place in the issue of the Berliner patent would evidently be to continue so much longer the practical monopoly of the art of electrical transmission of articulate speech. Under these circumstances, I think it clear that the duty of the respondent corporation was to use the greatest degree of diligence in prosecuting the application to an early issue. There should have been, at least, as great diligence as their own interests would have called for, had their business been unprotected by patent rights.

Thus far there is no dispute between the parties here. It is admitted that the greatest diligence was incumbent on the respondent corporation, and that, if there be unlawful delay, and if there be bad faith and an intention to delay on the part of the applicant, then the patent may be here held to be void. From the filing of the application up to June 9, 1882, it is not contended that there was any delay upon which a decree here should be founded. There were delays in prosecuting the application, but they are said to be no greater than is usual in the patent office. On the date last given the solicitor in charge of the application was notified by the examiner that, "as at present advised, it is believed that the claims presented may be allowed, but final action in this case must be suspended in view of probable interferences with other pending applications." In October, 1883, the solicitor wrote to the office, asking that the case might receive attention, to which it was replied that the apprehended interferences had not yet been declared; and the correspondence was continued in the same sense until March, 1888, when the application was suspended until May 1, 1888, on the ground of the expected interference, and also "for the purpose of awaiting the determination of the telephone case in the supreme court." The application with which an interference was anticipated was that filed July 26, 1880, by Daniel Drawbaugh, in which he claimed to be the original and first inventor of the telephone. His claims were rejected on the ground that the instrument which he claimed to have invented had been in public use and on sale for more than two years before the filing of his application. He had filed an affidavit, in which he denied that there had been such public use with his consent and allowance. There was abundant evi-

dence on file in the patent office by which was shown the fact of public use as early as July 26, 1878. It had been declared in Manning v. Glue Co., 108 U. S. 462, 2 Sup. Ct. 860, that the statute then in force did "not allow the issue when the invention had been in public use for more than two years prior to the application, either with or without the consent or allowance of the inventor." The case was then pending of the Bell Company against the People's Telephone Company, owners of the alleged telephone inventions of Drawbaugh, in which was involved the question whether Drawbaugh had in fact invented the telephone at the early day claimed by him, or whether, on the other hand, his claim was entirely false. Under these circumstances there was set on foot a "general understanding," as it is called, on the part of the examiner and the respective counsel for Drawbaugh and for the Bell Company, that the decision of the application for the Berliner patent should await the decision of the pending suit. There seems, on the testimony, no doubt that the Bell Company fully acquiesced in this general understanding; and I think that in so doing they failed in their duty and committed a wrong against the public. It was evident that in no case could Drawbaugh be entitled to a patent. He was clearly barred by the prior use of his invention. On the other hand, it is to be observed that the action against the People's Telephone Company might not be finally decided for many years, and that, when decided, it would not necessarily throw any light on the question then pending in the patent office, namely, whether Berliner or Drawbaugh was the first inventor of the microphone transmitter. The suit was for infringement of two of the early patents issued to Bell, the first for the electrical transmission of sound and the second for a receiver. The answer denied the validity of the patents, alleged anticipations, and further averred generally that Drawbaugh was the first inventor of the speaking telephone. The invention of the microphone, a particular form of the speaking telephone, was therefore not in issue. The case made by the People's Telephone Company, indeed, as was well known, was that Drawbaugh had invented the whole telephone system, as it was then known, including the microphone, long before Bell's invention. If this were found to be the fact, then, of course, it would follow that he had anticipated Berliner as well as Bell. But if this were found not to be the fact, that finding would throw no light on the question whether Drawbaugh had or had not invented the microphone subsequently to Bell and prior to Berliner. It could never appear in the patent office, therefore, that Drawbaugh was entitled to a patent; and only in one aspect of the telephone case could it be decided that Berliner was not entitled to a patent. The plain duty of the respondent corporation, as it seems to me, was to press these considerations on the patent office, and insist on its right to a patent at once, leaving the question which was pending in the courts to be settled whenever a final decision should be reached, and leaving the decision of that case to have whatsoever effect it lawfully might on the validity of the patent. The commissioner, on such an application, might properly have been asked to take proofs, on

notice to Drawbaugh, so as to ascertain prima facie, and with sufficient certainty for the purposes of an administrative decision, by whom the first invention of the microphone had been made. It would well have been urged on him that it was his duty to make such an investigation of a question which was not in issue in the pending suit, and which the decision of that suit might furnish no guide in determining.

It is objected that there was no established practice in the patent office by which the question of priority of invention could be ascertained, and that, for other reasons, such an application to the commissioner had no prospect of success. It seems to me clear that the duty of the respondent corporation was to test these questions rather than to consent that they must be decided against them, for an acquiescence in the delay seems to me to be no less than a consent that no favorable result could come from the application. That the unwarrantable delay thus caused was intended by the respondent corporation I can have no doubt. In matters of this consequence, involving the whole business of a company of so large capital and engaged in so large affairs, I cannot doubt that they were fully advised, both as to the facts and as to the law; and I think "that their acts were so gross as to forbid any inference except that they dishonestly delayed" the issue of the patent, taking advantage for that purpose of the perhaps excusable willingness of the officials of the patent office to postpone the decision of a sharply debated question, in which a large public interest was involved, on the chance that a decision of the supreme court might supersede the necessity for a decision on their part.

In March, 1888, a final decision was rendered by the supreme court in the action against the People's Telephone Company (8 Sup. Ct. 778), and the claim of Drawbaugh to the invention of the telephone was held to be unfounded. In June, 1886, the examiners in chief of the patent office had decided that Drawbaugh's application was barred by reason of two years' public use of the invention, and the time for an appeal from this decision expired in June, 1888. The commissioner then set on foot a proceeding to determine whether in fact there had been a public use of Drawbaugh's invention for two years before the date of his application; and the Berliner application was still suspended to await the result of an interference which might be declared in case Drawbaugh should prevail in the public-use proceeding, the rule of the patent office being that no interference could be declared unless in cases where the interfering applicant, if successful in the interference proceeding, would be entitled to a patent. This public-use proceeding, whose purpose is to permit the applicant to be heard on the question of public use when that question has been raised by the office, was strenuously objected to by Drawbaugh, who took no evidence in the proceeding. In October, 1891, the proceeding came to an end by a final decision of the commissioner to the effect that Drawbaugh was barred by the prior use of his invention. On the next day the Berliner patent was ordered to issue, "largely because well-settled principles of public policy forbid us to give any further opportunities for holding this application in the office."

There was no effort, so far as I can see in the evidence, on the part of the respondent corporation to prevent this further delay. There was ample evidence before the commissioner of the fact of prior use. The applicant Drawbaugh declined to take evidence in contradiction; and it seems to me clear that the respondent corporation should have urged upon the patent office a decision on the prima facie case which they had made. I am persuaded that the delay thus caused, as well as the delay previous to the decision of the supreme court, was intentionally acquiesced in by the respondent corporation for the purpose of delaying the issue of the patent. This seems to me the only conclusion from a consideration of the whole evidence. It is in proof that during the whole of the time from 1882 to the issue of the patent, and perhaps earlier, the solicitors of the Bell Company were urgently insisting to the officials of the patent office that prompt action should be taken in the application. Even while the "general understanding" was in force, to the effect that the application should await the decision of the Drawbaugh case in the courts, the evidence shows that these urgent applications were made to the patent-office officials. I cannot think that it was by any one expected that such oral applications should have any effect, unless, at least, they were made in support of formal applications made on the record, and of formal arguments and representations made in support of such applications. The officers of the company also testify that at all times they were urgent in pressing for the issue of the patent. As to their state of mind, and their actual intention at the time, I am free to say that I place less reliance on their statements now made than on a single statement made at the time. In February, 1886, while the "general understanding" was in force, Mr. Swan, one of the solicitors for the application, wrote as follows to the president of the Bell Company:

"I am working the Edison and Berliner cases along quietly, and think they will be granted by the examiner without interferences or appeals. so that we can take them out by paying the final fees. We have six months to do that in."

This is but a single paragraph out of many hundreds of pages; but I think it shows clearly what was the purpose of the respondent corporation, consciously formed by their officers, and perfectly understood by their agents at the patent office. The application was to be "worked along quietly," although apparently pushed with great energy. There would be delay, but no substantial obstacle to the grant of the patent; and even after the patent should be ordered to issue there might be a further delay within the limits of the law, and without imperiling the patent. If this letter does not mean this, I am at a loss to know what it does mean. My conclusion, therefore, is that the complainant has made out the case, and that there should be a decree that the patent in question is void, and shall be delivered up to be canceled.