KIRBY BUNG MANUFACTURING Co. *v.* WHITE and others.

(*Circuit Court, E. D. Missouri.* March 17, 1880.)

PATENT—RESTRAINING ORDER.—The function of a restraining order is to protect the plaintiff without unnecessarily oppressing or annoying the defendant, and will, therefore, be framed according to the circumstances of each case.

SAME—DECREE OF COURT—GROUND FOR RESTRAINING ORDER.—In the case of an infringement the final decree of a court of competent jurisdiction, restraining the validity of a patent, in the absence of collusion, furnishes a sufficient basis for an injunction or some form of a restraining or accounting order.

SAME—PROOF IN ABSENCE OF DECREE.—"If there has been no decision as to the patent by a United States court, on the merits, the party is driven to show that his patent went into use undisputed for a sufficient time to raise a *prima facie* case in his favor."

TREAT, J., (*orally.*) The case of Kirby against several defendants is before the court on a motion for a provisional injunction. It is a patent case. It may not be known to counsel, who appear here from another circuit, what the uniform rule is in this circuit as to applications for provisional injunctions. An injunction is the strong arm of equity. It should never be allowed to operate oppressively upon any one, but be used for the purpose of securing the rights of the complainant in the case pending the litigation, without unnecessarily injuring the other party. Were it otherwise, the injury resulting might be very serious. For instance, in the milling cases before us, Mr. Justice Miller allowed the defendants' mills to continue in operation on giving bonds of

$125,000 or $150,000, instead of granting an injunction in the first instance, which might have closed all the mills in the north-west. If he had stopped all of the mills by the issuance of an injunction *simpliciter*—it having been finally determined that the complainants' patent was invalid—there would have been a great wrong perpetrated upon the parties defendant. Hence, the rule is this,—and is the true rule in equity, as settled in this court by Justice Catron, and existing up to the present hour, and I am authorized by Judge McCrary to say that he fully concurs,—that the function of a restraining order is to protect the plaintiff without unnecessarily oppressing or annoying the defendant. Whether restraining orders go out in patent cases, or in other cases, they are framed according to the circumstances of each case, to-wit: In one case there may be such circumstances as require an injunction *simpliciter*, but ordinarily a bond and order for accounting suffices, and sometimes simply an order for an accounting. Hence, the form of the order varies with the circumstances. I make these preliminary remarks so that parties may understand that an injunction *simpliciter* is not to be had for the asking. I am very well aware that the practice under the state laws is different, if it now is the same as years ago. Under the state practice there is but one form of a restraining order, to-wit: If an injunction is asked for provisionally, it must issue as an injunction *simpliciter*. This is not the rule in equity, and has never been the rule in the courts of this circuit. The course in these preliminary matters is to protect the complainant without unnecessarily injuring the defendant.

There is a patent presented to the court for a bung-cutting machine. It is a combination patent, and a very commendable patent in itself. The various devices work automatically to effect the desired end. This patent has been before the circuit court of the United States for the district of Indiana, and a decree was ordered by Judge Drummond in favor of the complainant; and not being familiar with the facts of that case we take it for granted—as the law requires—that it was a correct decree, upholding the validity of the patent.

By a reference to the proofs I see that the matter was very fully considered, and the "claims" involved in this suit are said to be valid and subsisting "claims." For the purposes of a provisional injunction under the patent law two things, or either of two things, may exist, to-wit: As in this case, a court, after full consideration of the matter, has rendered a final decree upholding the validity of the patent, that is a sufficient basis in itself for an injunction or some form of a restraining or accounting order, provided the party defendant in the particular case has infringed the patent; in other words, the court, on a motion for a provisional injunction, does not go into the merits to ascertain the validity of the patent. *Prima facie* the patent is valid; but under the uniform rulings of the courts of the United States for more than half a century, if there has been no decision as to the patent by a United States court, on the merits, the party is driven to show that his patent went into use undisputed for a sufficient time to raise a *prima facie* case in his favor. But if the court, after a due consideration of the matter, has reached the conclusion that the patent is valid, on this provisional matter the inquiry is not open.

The United States circuit court, sitting in Indiana, Judge Drummond giving the opinion, decided after a fair contest, for from the record it seems to have been a *bona fide* contest, that this patent is valid. I make the remark "after a fair contest," because sometimes it has been supposed that a mere decree entered *pro forma* on the merits is sufficient in itself to require all other United States circuit courts to grant a provisional injunction. Not so. We have held in this circuit that it must have been an honest and not a collusive matter. In a case in the United States circuit court of Alabama a matter formerly arose which illustrates my remark.

When one of the most distinguished lawyers of New York was before me, he cited a case which was decided in California, and which, on an examination of the record, I found to be a sham case, the decree being obtained by collusion in order to allow parties who held the patents to put under restraint parties refusing to submit to their demands; and, of course,

I considered it of no force. Just so in the Alabama case. It was another one of collusion. Perhaps there has been a more remarkable illustration arising out of the milling cases, concerning what are known as the "new process" patents. An alleged collusive case arising as to these patents .went to the supreme court.

When one of these matters is presented to the judges of the circuit court they are bound to see whether it was a "consent" or collusive decree, in order to form a basis on which the party obtaining it might go through the country levying tribute. Such is not this case. This is an honest case—has been fully considered, and everything connected with it appears to be a fair and honest contention. In making these remarks I make them in a general way. Here is a case which has been decided after a full and fair contest by parties struggling for their respective interests in the matter.

We come now to a consideration of what the patent is. As already stated the matter in controversy here is as to one of a number of devices to effect a particular end. It is a little remarkable that in this case there is no disclaimer. Ordinarily, after the specifications set out the condition of the art, etc., it disclaims certain things. This patent does not. The patentee divides his claims into five parts. It is alleged that the fourth claim is infringed. Without a model of the drawings those who listen to me could hardly understand the claims of the patent. We find that the principal object was this: that inasmuch as the old cutting board, which constantly became frayed or chipped when a fish-mouth chisel was used, and great difficulty and trouble occurred, Mr. Kirby invented an automatic contrivance by which through (or over) the fish-mouth chisel there would be conveyed little square blocks, the diameter of which would be the diameter of the bung desired, with a slide pushing over the mouth of the chisel one block on top of another. But the chisel being fish-mouthed of course it would be passed into the upper block a short distance; and that block thus answers the ordinary purposes of a cutting board, sliding another on top of that, so that it continued successively to utilize each block and give

the bung desired without the loss of any material. He had a very ingenious arrangement for that, and it operated with the whole machine, automatically. But that involved a cone, eccentrics, various bars, slats, slides, etc., which it would take too much time to explain, unless I had the model before me.

The patentees' claim is described by himself as follows:

"1. The chisel or cutter D, with cylindrical cavity, in combination with the plunger C, and feeding bar $i$, constructed and arranged, substantially as described, for the purpose of cutting bung blanks from separate square blocks of wood.

"2. The combination of feeding slide-bar $i$, feed-box C, guides $oo$, and spring $o^1$, for feeding successively one of a series or pile of bung-blocks forward in exact line with the cutting edge of the chisel of a bung machine, operating substantially as described.

"3. The cutter D, feeding slide-bar $i$, and plunger C, so arranged relatively to each other as that the cutter or chisel shall, when cutting, have at least two blocks or blanks in line with its cuting edge, and that at each stroke of the machine the cutter shall finish cutting one block or blank, and enter and partly cut a second blank, instead of cutting a single blank at each stroke, substantially as and for the purpose hereinbefore described.

"4. The cutter and feeding device of a bung-cutting machine, arranged substantially as hereinbefore described, as that each block as it is fed into the machine shall serve as a cutting board for the next preceding block.

"5. The use of the hinged bar $m$, in the slot of the sliding feed bar $i$, in combination with the vibrating shaft $h^1$, whereby, by raising the bar $m$, the motion of the feed bar $i$ is suddenly arrested, without stopping the motion of the other parts of the machine."

The fourth claim is the one which it is alleged the defendant infringes. Now, if the combination for placing one block after another on the fish-mouth cutter, whether underneath or sideways, vertical or longitudinal, so as to operate as a cutting board through which that fish-mouth may penetrate,

is an infringement of this patent, the complainant would be correct. But it is not so. It is a particular way of doing a particular thing. It is a mechanical device wrought out by combinations, which combinations are not in defendant's machine.

To support this motion the complainant, Mr. Kirby, gives a general affidavit, which on examination amounts practically to nothing more than his verification of the original bill. On the other hand, we have a description given of what the defendant's operations are. They are not produced by plaintiff's combination of mechanical devices. The consequence is that the motion must be denied. But it is proper to remark, in this connection, that it is desirable that on these motions for preliminary injunction the court should give no elaborate opinions because the merits are not fairly before it; and this case illustrates it. We have the opinion of the complainant in the bill that the defendant has infringed his patent, but what does that amount to? He ought to give us what the defendant is doing. It is not for him to assume the functions of the court and swear that his case is as he has averred. He should give the facts to the court and let it determine on those facts whether there is an infringement or not. On the other hand, we have from the defendant a description of what he is doing, illustrated by drawings.

In this imperfect state of the case, without passing upon the merits, the court decides that there is nothing before it at this stage of the case to show an infringement. That is all the court decides this morning.

The motion for a provisional injunction is denied.

McCRARY, J., concurred.