Worswick Manuf'g Co. and another *v.* City of Buffalo and others.

*(Circuit Court, N. D. New York.* May 8, 1884.

PATENT INFRINGEMENT—BURDEN OF PROOF.
  When in a patent-infringement cause the defense relied on is that the plaintiff was not the original inventor, the burden of proof is on the defendant to satisfy the court on that point beyond a reasonable doubt

In Equity.

*M. D. Leggett* and *John Crowell,* for complainants.

*Giles E. Stilwell,* for defendants.

COXE, J. The complainants are the owners of letters patent, No. 171,190, granted December 14, 1875, to Edward O. Sullivan for improvements in harness for fire-engines. The patent relates not only to the construction of the harness but also to the manner of suspending it above the horse. The object of the invention is to enable the horses to be kept unharnessed until the moment of the alarm, and

then to attach them to the engine with great expedition. One man is thus enabled to do the work of three under the old system. The harness is made in sections, is permanently fastened to the neap or thills and suspended from the ceiling by means of straps and spring catches so that it may be dropped upon the horse and quickly secured. Before the use of this apparatus horses were kept continually in harness night and day. The result was that they were irritated and galled and the harness was injured and soon destroyed by the constant rubbing which this irritation occasioned. There can be no doubt regarding the utility of the invention. Its advantages may be summarized as follows: Relief to the horse, expedition in reaching the fire, durability and reliability of the harness, economy in the employment of firemen and harness makers. And when it is remembered that promptness in arriving at a fire has often prevented a great conflagration the indirect benefits can hardly be estimated.

The claim in controversy is the third. It is in these words:

"(3) The combination, with a harness for a fire-engine or like apparatus, of a device for suspending said harness above the place occupied by the horse when attached to the apparatus, substantially as and for the purpose set forth."

The defenses interposed are: *First*, the claim is void for the reason that there is an attempt to patent a mere abstraction—the idea of suspending a harness from the ceiling at a particular place; *second*, the defendants do not infringe if the claim is confined to the particular mechanism described in the specification; *third*, the patentee was not the original inventor.

So far as the records of the patent-office show Sullivan was the first to enter this field of invention. No other patent, American or foreign, is introduced to anticipate or limit the claim referred to. It should, therefore, be construed broadly to cover any similar apparatus which suspends a harness in substantially the same manner. The details of construction both in the harness and suspending apparatus are non-essentials, inferior and subordinate to the principle embodied in the patent which is the paramount and superior consideration. The man who first conceived the idea of suspending the harness above the horse and put it into successful and practical operation is the one who conferred the benefit and is entitled to the reward. It would be an exceedingly illiberal and narrow construction to hold that he should be deprived of the fruits of his ingenuity by one who simply changed the form of the harness or of the device by which it is suspended. No principle is better settled than that a mere abstract idea is not the subject of a patent, but that principle has little application here, for the reason that the inventor has put his idea into tangible shape and given it form and substance. For years the problem was how to get the engine to the fire in the shortest possible time. By a combination of old devices Sullivan has reduced time to the minimum and accomplished a confessedly beneficial result. It is not an ab-

straction he seeks to secure, but the apparatus by which the idea is carried out.

With the claim thus construed and in view of the state of the art very little need be said upon the question of infringement. The defendants have adopted an analogous combination. The harness and hoisting apparatus used by them are substantially the same as those described in the patent. They have quite likely introduced some improvements; they have employed the well-known mechanical equivalent of a pulley and weight for a coiled spring; they suspend the whole harness and attach no part of it to the pole, and there are minor points of difference between the two mechanisms, but in all essential particulars they are alike. The main effort on the part of the defendants has been to show that Sullivan was not the original inventor. Here the burden is upon them to satisfy the court beyond a reasonable doubt. A mere preponderance of evidence is not enough; the proof must be of such a convincing character that the court can say without hesitancy that the allegations of the answer in that behalf are true. Has such proof been offered? It is thought not. A fair conclusion to draw from the evidence is, that the defendants have succeeded only in casting doubt upon the title of the patentee. Instead of capturing the citadel they have simply made a breach. True it is that before the patent vague conceptions of the invention had entered other minds; true it is that others had approximated more or less closely to the successful realization. No one had quite reached the goal.

The evidence shows that in one instance, while the horse was standing harnessed in the stall, the collar was, by means of a cord, pulley, and weight, raised on his neck to prevent chafing, heat, and irritation. In another case a single harness, without collar and hames, was attached to the thills of a light fire wagon. The harness and thills were elevated to the ceiling by a rope, pulley, and weight. A similar method was, at another time, applied to the harness of hose carts, excepting that the collar and hames were left on the horse. There was also evidence tending to show that in 1872, at Louisville the harness of a hose cart was suspended by a rope and pulley from the ceiling and that the collar was hinged and was fastened by a snap or spring-lock at the bottom. No witness was called who recollected seeing a harness for fire engines suspended prior to the date of the patent. But, if not discredited, the evidence relating to the Louisville apparatus would certainly have the effect of restricting the claim within exceedingly narrow limits. The complainants have, however, succeeded in showing that there may well be a mistake both as to the time when, and the manner in which, the harness was suspended at Louisville. The chief and assistant chief of the fire department of that city during the year 1872, never saw or heard of the apparatus described by the defendants' witnesses. The chief next in succession who, previous to his elevation to that office, had been in and

about the engine-houses for 20 years, gave like evidence. A member of the Cleveland fire department who came to Louisville in 1879 for the purpose of explaining and introducing the Sullivan apparatus testified that he visited the different engine-houses but saw nothing at all resembling a swinging harness. The Louisville firemen were surprised and pleased with the invention and it was immediately adopted by them.

It must, therefore, be said within the rule heretofore adverted to, that the defendants have not succeeded in establishing their defense.

There should be a decree for an injunction and an account, with costs.