### CARTER-CRUME CO. v. ASHLEY et al.

(Circuit Court, N. D. New York. June 26, 1895.)

PATENTS—SALESMEN'S CHECK BOOKS—INJUNCTION PENDENTE LITE.

Injunction pendente lite against infringement of the Carter reissue patent (No. 10,359), for improvement in salesmen's check books, will be granted, the patent having but 3½ years to run, complainant having built up a large business employing many men and much capital, defendants being small users, the manufacturer who sold to them being a small and recently organized corporation; a decision sustaining the patent having been rendered six years ago, in a case in which substantially the same defenses now relied upon were presented, there having, since such time, been general acquiescence in complainant's rights, and there being little doubt that defendants' book is an infringement:

Suit by the Carter-Crume Company against John W. Ashley and others for infringement of patent. Complainant moves for preliminary injunction.

C. H. Duell, for complainant.
George B. Selden, for defendants.

COXE, District Judge. The complainant, as owner of reissued letters patent, No. 10,359, asks for an injunction restraining the defendants from infringing pendente lite. The patent was granted

to John R. Carter for improvements in check books used by salesmen. It is dated July 24, 1883. The original patent is dated January 24, 1882. The application for the reissue was filed May 17, 1883. The reasons that induce the court to issue the writ may be briefly stated as follows:

First. The patent will expire in about three and a half years. During the long period that it has been in existence its owners have built up a large and flourishing business under it employing many men and several hundred thousand dollars of capital.

Second. The defendants are small users. The amount involved so far as they are concerned is less than $25. To cease infringing during the pendency of the suit can cause them little inconvenience. On the contrary, should infringement continue it will result in serious if not irreparable loss to the complainant.

Third. The manufacturer who sold the books to the defendants is the American Counter Check Book Company, a West Virginia corporation recently incorporated with very little actual capital and no good will behind it. Little harm can be done by requiring it to desist from infringing until the final hearing.

Fourth. The complainant's patent has been in existence $13\frac{1}{2}$ years. During that time various attempts have been made to evade the patent but usually without success. The acquiescence in the rights of complainant during the last four years has been general.

Fifth. In 1889 the then owner of the patent brought a suit in the Eastern district of Michigan against Charles A. Hurlburt and others, and moved for a preliminary injunction before Judge Brown, now Mr. Justice Brown. The answer alleged the invalidity of the patent as a reissue and, substantially, all the defenses which are now relied upon. The court decided that the patent was valid and infringed and would have granted an injunction outright but for the fact that the complainant was guilty of laches in bringing the suit. The order was for an injunction unless the defendants filed a bond within thirty days. It is manifest that the complainant's case is much stronger than it was five years ago. Then, with no previous adjudication of any kind and a much weaker case of acquiescence, Judge Brown thought the patent sufficiently strong to warrant an alternative writ. The complainant to-day presents the case of 1889 plus the weight of Judge Brown's decision and five years of peaceful enjoyment.

Sixth. There can be little doubt that the defendants' book infringes the first and second claims of the patent unless they are to be confined to the exact structure described and shown. The court in the Michigan case saw no necessity for a construction so limited. The defendants' book may be an improvement, but nevertheless, it has all the features of the claims. The transfer leaf is not attached, as is the leaf of the patent, but it is "bound in the book" in the same sense that the Carter leaf is so bound. The manner of the binding is not the essence of the invention.

The foregoing considerations present a strong case for an injunction. This is manifest. The defendants seek to avoid the force of

the Michigan decision by the assertion that the question of the invalidity of the reissue, as such, was not presented to the court. It is true that nothing was said by the court on the subject in the oral opinion delivered, but to argue from this that the defense was not urged is to proceed without sufficient foundation. If presumption is to be indulged in it would seem to lead to a contrary conclusion.

As before stated the defense was pleaded in the answer in the Michigan case. The struggle there was genuine and bitter. The defendants' case was conducted by an able patent lawyer thoroughly conversant with the doctrine of the supreme court regarding reissues. To assert that the attention of the court was not called to the point that the claims relied upon did not appear at all in the original patent, is, in the circumstances, to assert an almost unthinkable proposition. The other defenses were before the court in the Michigan case and were there overruled.

There are some new features in the proof, but as now presented there is too much doubt about the new evidence both on the facts and the law to justify the court in refusing relief to the complainant. The equities are strongly with the complainant. The injury done to the defendants by granting the writ will be as nothing compared to the injury done the complainant by withholding it. Motion granted.