SOCIETE ANONYME DU FILTRE CHAMBERLAND SYSTEME PASTEUR et al. v. ALLEN et al.

(Circuit Court, N. D. Ohio, W. D. August 31, 1897.)

No. 1,344.

1. PATENT INFRINGEMENT SUITS—PRELIMINARY INJUNCTION—PRIOR DECISIONS.
A decision by a circuit court of appeals affirming an order granting a preliminary injunction will not prevent the circuit court, in a subsequent suit against a different infringer, from exercising an independent judgment, when it has before it new evidence, consisting of correspondence between the applicant and the patent office, which presents strong grounds for giving the claims a much narrower construction than was given them in the former suit.

2. SAME—DEFAULT DECREE SUSTAINING PATENT.
A final adjudication sustaining a patent, which is the result of an earnest, honest, and effective litigation, free from any suspicion of collusion or arrangement between the parties, or negligent abandonment of the defense, is conclusive on an application for a preliminary injunction in a subsequent suit. But all other adjudications are at most only persuasive, and it is open to the court in the subsequent suit to re-examine the case de novo. Held, therefore, that such a decree, taken after defendant had failed to appear to further contest the case on final hearing, was not conclusive in a subsequent suit. .

3. SAME—NEW DEFENSES.
Even if a prior decree sustaining the patent is without suspicion of collusion, it is not conclusive where the defendant in the new litigation presents a new attack upon the patent, or new evidence of importance, entitled to consideration as presenting a really new issue, and not a mere pretense of one.

4. SAME—CONSTRUCTION OF PATENT—PRIOR ADJUDICATION.
Where a patent has been sustained in prior litigation, the court, in a subsequent suit against a different infringer, may, on motion for a preliminary injunction, be required to decide whether the claims shall be given a broad or narrow construction, in order to determine the question of infringement: and if, in such case, the broader construction is seriously and formidably brought in question by the evidence, the injunction should be refused unless there is sufficient judicial support on plenary hearing for the broader construction. ·

5. SAME.
On application for a preliminary injunction the court will not be inclined, on ex parte affidavits, to determine the proper construction of the patent in a doubtful case, but will refuse the injunction, and leave the question for the final hearing, unless it shall appear that irreparable injury will result to the plaintiff.

6. SAME—EVIDENCE OF INFRINGEMENT.
Where the question of infringement depended upon the composition of a certain compound, the analysis of which was difficult, and the affidavits of the experts were uncertain and equivocal, amounting to little more than the statement of an opinion that the substance did infringe, held, that a preliminary injunction should be denied.

7. SAME.
Patent No. 336,385, for the Pasteur filter, considered on motion for preliminary injunction, and said injunction denied.

This was a suit in equity by Societe Anonyme du Filtre Chamberland Systeme Pasteur and the Pasteur-Chamberland Filter Company against M. H. Allen and the Allen Manufacturing Company. The case was heard on an application for a preliminary injunction.

This is a bill by the plaintiff as the assignee of Charles Eduard Chamberland, claiming as the American patentee of the well-known ·Pasteur filter. The patent

involved is that of February 16, 1886,—No. 336,385. Besides the ordinary allegations charging infringement against the defendants, the bill contains this allegation: "And your orators further show that the validity of said letters patent has heretofore been affirmed, after strenuous litigation, by various decrees in equity in several of the circuit courts of the United States and in the circuit court of appeals for the Sixth circuit, and that the public have long and generally acquiesced in that validity." The bill then alleges that the defendant Allen had been the agent of the plaintiff the Pasteur-Chamberland Filter Company at Toledo, Ohio; that he became familiar with the business of the company, and built up a profitable business, which he sold out with his principal's consent, but continued in the confidential employment of the principal for the purpose of detecting infringements; that in that way he became familiar with the processes of manufacture and with the business of plaintiff, and, after this, produced a counterfeit imitation of the filters made under the patent, and introduced the said counterfeit imitation to the market, greatly to the plaintiff's damage. It contains the usual prayer for injunction, account, plea for damages, etc.

The specifications of the patent, after describing the unsatisfactory condition of filtration through burnt brick, and various other materials used for the purpose, states that, however efficient the above-named substances may be for filtering purposes, they do not "retain all germs or microbes or extremely fine organisms which are in suspension in the water or other liquid, such as in infected blood taken from an animal having died of splenic fever, or generally any blood infected with microbes. * * * My invention is designed more completely to hold back and retain such germs; and it consists of a compound to be used for filtering water, wines, beverages, and all liquids generally." "The compound is formed, substantially, of pipe clay, or any other suitable clay, and porcelain earth, or its equivalents, hereinafter named. The clay is diluted in water, and then mixed with the porcelain earth or its equivalents. The porcelain earth is ground or reduced to fine powder in a suitable mill, after having been previously baked in any suitable kiln. The proportions are from 20 to 40 per cent. of clay to 60 or 80 per cent. of porcelain earth or its equivalents. They may, however, vary more or less. I wish it, however, to be understood that I do not limit myself to the above-named substances, for the same, or very much the same, results may be attained by using, for instance, silex, magnesia, or its equivalent, instead of porcelain earth." "The above-described compound is preferably intended for filtering liquids under pressure, owing to its being porous but to a small extent; and for this purpose any suitable filtering apparatus may be employed." "The manufacture of the filtering bodies may be effected by casting, molding, or turning, as in the manufacture of pottery ware. The filtering body is then baked in a biscuit or other kiln, in the usual way; the temperature at which it is baked ranging, say, from 1,850 degrees to 2,400 degrees, Fahrenheit." "A filtering body produced from the above compound is homogeneous, and fulfills the required conditions for filtering the hereinbefore named substances, and thereby obtaining the results herein mentioned." "I do not wish to be understood as laying claim, broadly, to the materials hereinabove mentioned as a filtering compound, but only when they are treated as above specified."

The patentee then claims as follows: "I claim a filtering compound formed of porcelain earth, baked and reduced to a powder, and pipe clay, combined in the proportions set forth, the said compound being baked, substantially as set forth."

The answer, so far as it is necessary to state its contents, denies that the plaintiff's assignor was the first inventor in this country or elsewhere, or that the alleged invention was not known in this country at the time of his application; denies that the defendant has made, used, or sold any of the compound contained or embodied in the invention set forth and covered by the patent; denies any infringement or injury to the plaintiff. It alleges that the compound has long been well known to those skilled in the pottery art, and names a great many persons acquainted with it before the issuance of the plaintiff's patent; alleges that it was anticipated by many other patents, which are numerously named. It also alleges that the compound was well known to named persons in France, and that it was largely on sale there and elsewhere and in the United States prior to the issuance of this patent; that substantially the same com-

pound and process was in very old and common use among the people in connection with cisterns, wells, the cells of galvanic batteries, etc., and states that it was thoroughly well described in many books of science and art, which are named and described in the pleadings. It alleges that while the patent was pending in the patent office, under the demand of the commissioner of patents, the patentee was required to so limit and confine his claim that he cannot now ask for a construction so broad as that put upon it by the bill, and so broad as to cover the contrivance used by the defendant. The answer denies any acquiescence by the public, and especially denies that the patent has been affirmed by any final decree of any court of the United States, and alleges that the plaintiffs had begun many suits against divers alleged infringers, but had designedly and purposely failed and neglected to prosecute any of them to a final decree. It denies that the defendant Allen was the special or confidential agent of the plaintiffs, except that he says that he was a dealer in filters, and purchased and sold the plaintiffs' filters until he found that they were not marketable, because of their high price, etc.; sets up that the filters manufactured by the plaintiffs have not been marked "Patented," as required by law; and pleads also that the alleged invention was patented in Great Britain and in Austria, and that this patent is subject to the life of the patents in those countries respectively, but it does not aver that the patents have expired in either of those countries.

The proof submitted on this motion consists of affidavits, counter affidavits, documentary proof, and the file wrapper of the patent office, certified transcripts from the records of the courts, etc.

Paul A. Staley, for complainants.
Almon Hall, for respondents.

HAMMOND, J. (after stating the facts). When this argument was first presented, there seemed to be no escape from the apparently conclusive precedent found in the case of Blount v. Chamberland Systeme Pasteur, 3 C. C. A. 455, 53 Fed. 98, in which our own circuit court of appeals had pronounced in favor of the patent, to say nothing of the other cases relied upon where the patent has been involved. That court was then acting under the authority of the case of Watch Co. v. Robbins, 6 U. S. App. 275, 3 C. C. A. 103, 52 Fed. 337, since overruled in the case of Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 19 C. C. A. 25, 72 Fed. 545. But whether, under the authority of the one or the other of those cases, the judgment in Blount's Case, supra, cannot be taken as at all final, nor in any sense conclusive of our judgment here. Mr. Circuit Judge Jackson, in rendering the opinion, expressly disclaims any consideration of the validity of the patent, further than to ascertain whether the preliminary injunction which had been granted by the circuit court was an improvident exercise of its legal discretion, and, as the case appeared upon that record, he held that it was not; and that is all there was in that case. It is true that in presenting the prima facie case of the plaintiff for a preliminary injunction the court considered particularly the prior patents then in evidence, and pronounced that they were not sufficient as against the prima facie presumptions which had been found in favor of the patent of the plaintiff "to clearly show its invalidity"; and on the proof then before the court long public acquiescence in the patent was regarded as an important fact towards establishing the plaintiff's prima facie case. But, mainly, the decision seems to have been based upon the defendant's prior business relation to the plaintiff, which it is said "presented a strong equity in favor of the com-

plainant, if it did not estop him from denying its validity under the authorities." On the question of infringement, as the question was then before the court, the learned judge says this:

"If, as the appellant's counsel contends, the granular element of the patented compound is confined to baked porcelain earth ground or reduced to fine powder, the question of infringement would be doubtful; but we are not prepared to hold that this is the proper construction to be placed upon the specification and claim of the patent."

The court then proceeds upon the face of the patent to hold that it is at least open to a broader construction than that suggested in the quotation from the opinion just made. But it is entirely evident from the opinion itself, and from an inspection of the record in that case, filed in evidence here, that the proof presented and set up in the answer in this case, coming from the file wrapper of the patent office, and exhibiting the struggle which took place there between the applicant and the examiner for a limitation on the words of the claim as originally presented, was not before that court in any way. Counsel for the plaintiffs here ask us to assume that it was, because "the file wrapper is made a part of the defense in probably 99 per cent. of all contested patent cases," relying upon a statement in Carter-Crume Co. v. Ashley, 68 Fed. 378, protesting that the fact that nothing appears in the opinion of the court about a point is not conclusive evidence that the point was not made. This is undoubtedly true, but the presumption that it was made is always overcome by positive proof drawn from the record and the pleadings that it was not. But, apart from all this, it is not upon any such presumptions as that indicated that this court would act when, upon the proof made here, it is apparent that the records of the patent office contain formidable evidence that this very question of the nature and extent of the equivalents that may be protected by the patent was the subject of controversy there, and that the patentee, by his own correspondence and amendments to his original application, has undertaken to settle with the examiner the precise meaning of his claim in this regard. If there were nothing else in this case, that fact alone, specially pleaded in the answer, and supported by the exhibition of the record, would require any court to consider independently and de novo such a question as that. Thomas v. Spring Co., 23 C. C. A. 211, 77 Fed. 420, 431. It is entirely plain that the court of appeals, in the opinion by Judge Jackson, was giving a broad construction to the words of the patent as written therein, wholly uninfluenced by any such fact as that just mentioned, or else it surely would have been noticed. That opinion could not have been written without calling attention to the nature and force of such proof as that if the file wrapper had then been before the court. In a case directly between the selfsame parties there had been an action at law involving the same patent, and this was pleaded as an estoppel; but it was held by the supreme court that it must appear either upon the face of the record, or be shown by extrinsic evidence that the precise question raised was determined in the former suit, that the burden of proof is upon him who claims the estoppel to

show that this was so; and that, unless it was done, the case will be at large, and open to a new contention whenever any uncertainty as to this appears which is not removed by extrinsic evidence. Russell v. Place, 94 U. S. 606; Lantern Co. v. Meyrose, 27 Fed. 213. Surely, if this be so as to the technical estoppel of a judgment between the same parties, it is far more operative as a principle where the suit is between other parties, and there is no pretense of any technical estoppel, as in this case. As was well remarked by counsel for the defendant, if this case, upon the record we have here, should come before the court of appeals itself, they certainly would not be bound by anything contained in the opinion of Mr. Circuit Judge Jackson as to the validity of this patent, or be compelled to extend its effect beyond the facts then exhibited; and this court, in a condition like this, is not more bound by such an interlocutory proceeding in that court than itself would be.

It is not quite so clear that the other defense set up in the answer, of the alleged insufficient description of the thing patented and the process by which it is made, might not have been made in the case before the circuit court of appeals. The defense is based mainly upon the words of the specification and claims themselves, and does not so much depend upon evidence extrinsic to the letters patent, though there is in the file wrapper very suggestive proof that in the controversy with the examiner, already mentioned, the patentee undertook with much more detail than is contained in the specification to explain the exact process by which his compound was to be made, which, in a patent like this, as we shall presently see, was a matter of great importance; and, in view of the limitations imposed upon the patentee by the examiner in the progress of the case through the patent office, it does seem a little astonishing that the specification should have been allowed to assume the indefinite form in which the description of the process is given. The reading of the record in the patent office leaves the impression that it was not there understood that the patentee was entitled to the broad and generous construction given to the language of his claims by Mr. Circuit Judge Jackson; and when we come to examine that language in the light of its official history in the patent office there is considerable force in the contention on the part of the defendant that this is substantially a new defense. At least it makes somewhat justifiable the claim of the defendant that it is new evidence introduced in favor of whatever defenses were made in the former adjudication. And certainly, in the light of that record, it is very doubtful whether the broad construction given to this patent by counsel for the patentee in his argument can be sustained. It seems to me the argument made here goes a bowshot beyond the opinion of Mr. Circuit Judge Jackson.

There is another defense set up in the answer of the expiration of a prior Austrian patent, and still another that the patented articles of the plaintiff are not marked "Patented," but I do not know that on the proof we have here I should feel authorized to regard these as sufficiently pertinent, or as taking the case out of the rule of precedent. The other alleged new defenses are, for the time being at

least, more important; and it does seem to me that both in the pleadings and the proof the defendant has presented an entirely different case from that which was presented in the court of appeals.

What has been said here in reference to the former case in the court of appeals equally applies to it in the circuit court at Cincinnati, when it was returned there from the court of appeals for further proceedings. Whatever additional proof was on file in that case, and, whatever additional questions may have been projected into it, clearly it was not a straight-out litigation between the parties, resulting in a binding decree having the force of precedent, either directly or by comity between the courts. In form, to be sure, it is a final decree between the parties, but it was substantially a judgment by default. It may have been, without collusion, and without any understanding between the parties, a contested case up to the crucial time of the taking of the final decree, but the nonappearance of the defendant at that time to further contest it on the final hearing, and the fact that it was not so contested, makes it, substantially and in legal effect, so far as the question of the binding authority as a precedent is concerned, almost an ex parte proceeding. It is well known to every lawyer who is familiar with the proceedings of courts, and particularly of courts of equity, that where, on the final hearing, the defendant stands mute, abandons the case, and gives it up, the plaintiff is allowed to write such decree as he may choose within the technical limitations of the prayer of the bill. Any plaintiff, guided by skillful counsel, when such an opportunity occurs, may rightfully write up his decree to suit himself within all the possibilities of his opportunity; and it is not at all often, if ever, that the court will restrict him in this liberty of taking whatever may be taken by the bill; and so it has seemed to me from the beginning to be idle to talk about such a decree being final and conclusive as a precedent in a patent case, any more than it would be in any other case.

What has been said about the prior case in our own circuit may be said with greater certainty and force in regard to the other prior cases of the Pasteur-Chamberland Filter Co. v. Funk, in the Northern district of Illinois, 52 Fed. 146, and of Societe Anonyme du Filtre Chamberland-Pasteur Co. v. Egerton Pipe Co., in the Western district of Wisconsin (not reported). The one was an application for preliminary injunction and a consent decree, while the other was a final decree upon a pro confesso. Taking all these cases together, I have not been able to resist a suspicion that the plaintiffs have avoided a square-out stand-up battle royal over this patent, such as seemingly is now offered to them, and that for some reason, whatever it may be, anything like a conclusive, or even persuasive, adjudication has not yet taken place about it; and a reading of the brief of defendant's counsel in this case has convinced me that in such a contest it is not at all certain that the patent can stand the ordeal. At least, it is a grave question of doubt whether it can be sustained in the broad form claimed for it in the argument upon this motion, or whether it can be so extended as to comprehend the compound used in the construction of the filter found in possession of the defendant, and exhibited in this case. In the wide scope assumed for it

by plaintiffs' counsel it is perhaps reasonably to be maintained that the defendant's compound is within the patent; but, if the narrower construction suggested by the patent-office record as contained in the file wrapper is to be established, repeating the words of Mr. Circuit Judge Jackson in the case before the circuit court of appeals, "it is extremely doubtful whether there has been any infringement," as we shall presently see. But, before going into that question, it is proper that I should refer to the elaborate citation of authorities upon the question of the binding force and effect of prior adjudications, and the cases that fall outside of that doctrine. The plaintiffs' counsel have cited numerous authorities to the effect that, where there has been a prior adjudication in favor of a patent, a preliminary injunction is almost, as a matter of course, in every circuit; but the limitation on this rule which is insisted upon by the defendant is suggested in the leading case the plaintiffs cite of Brush Electric Co. v. Accumulator Co., 50 Fed. 833, where Judge Green remarks that:

"The rule is well established that where, as the result of a contested controversy, letters patent have been sustained, preliminary injunctions will be granted against infringers as a matter of course by the court which has adjudged such letters patent valid, and as a matter of comity by the federal courts in other circuits."

The limitation is found here in the use of the words "contested controversy," which, in my judgment, the patent we have under review has never had as yet.

One of the latest and most satisfactory statements of the law relating to preliminary injunctions is found in the case of Palmer Pneumatic Tire Co. v. Newton Rubber Works, 73 Fed. 218, in which Judge Goff states the law thus:

"It must be conceded that the mere patent itself is an unsatisfactory foundation on which to base a preliminary injunction. The rule is now well established that the patent alone does not create a sufficiently strong presumption as to its own validity as to justify a court in granting a preliminary injunction. It must be established either by prior adjudication, or a strong presumption of its validity must exist because of continuous public acquiescence, or it must have successfully withstood an action by interference in the patent office."

For this he cites an abundant list of cases, the enumeration of which I do not deem it necessary now to repeat.

I have already disposed of the question of prior adjudication in this case, and as to the claim of public acquiescence, which is also made in the bill, it may be said that the very circumstance of these suits which have been relied upon as adjudications, and which were not adjudications only because they were adjusted by the parties without trial, shows that there has not been that almost universal acquiescence which the law requires. Besides, the infringement must be clear, and, if doubtful, mere acquiescence will not support an injunction, as it should not, for there can be no injury if there be no infringement. It must be palpable. Drill Co. v. Lobdell, Holmes, 450, Fed. Cas. No. 2,166. The proof does not advise us, but I understood counsel for the plaintiff to say in argument that there have been other cases than those already mentioned, involving this patent. At all events, I do not think it has been established by proof

here that there has been any such public acquiescence as will take the place of prior adjudications.    The following cases abundantly establish the exceptions to the general rule of the force of prior adjudications either directly, as precedents, or indirectly, through comity:

In Wells v. Gill, Fed. Cas. No. 17,394, 6 Fish. Pat. Cas. 89, Mr. Justice Strong declares that ordinarily a verdict and judgment—speaking of final judgments—sustaining a patent are controlling over the discretion of the judge when he is asked to award a provisional injunction.    They relieve him from the necessity of inquiring into the validity of the patent, and, if he is satisfied that there has been an infringement, an injunction may be said to be almost a matter of course.    But in that case there was an appeal to the supreme court pending, and he held that he should look into the whole record, to see what was the character of the errors assigned; and although, under such circumstances, the court does not sit as a court of errors, it should not grant an injunction unless satisfied that the plaintiff has a clear right which the defendant has infringed.

In the case of Blake v. Rawson, Fed. Cas. No. 1,499, 6 Fish. Pat. Cas. 74, and Holmes, 200, Judge Sheply had a patent before him which had been sustained by another judge in the same circuit and by the circuit justice sitting with him on a motion for a new trial, and also in another case by another judge in a different circuit, and yet he ruled that:

"If the answer sets forth and counsel contend that the facts and law applicable to the machines as compared with the combination patented to the complainants were not properly presented to the judge who tried and decided those cases, and also shows that some of the facts adduced and proved by the defendant in support of some of the allegations now made by this defendant were not made and proved in either of the cases above named, he would carefully consider the testimony of the witnesses and the opinions of the experts in relation to the matter, without regard to any previous action on the patent by any court, as if it had never been tried or adjudicated upon."

In that case, upon such an investigation de novo, he sustained the action of the court in the previous cases; but, if it were proper, under such circumstances, to look into it at all, of course it would be proper to decide it the other way, if the case justified it.

In the case of Kirby v. Manufacturing Co., Fed. Cas. No. 7,838, 6 Fish. Pat. Cas. 156, and 10 Blatchf. 307, Judge Woodruff held that a previous decision of the supreme court between other parties involving the same patent was not conclusive upon him, because the facts presented in the later case were not the same.    He said that the decision in the one case did not operate upon the defendants as an estoppel in the other, and that, while the decision of a question of law arising upon the same facts is an authority which a judge would not feel at liberty to disregard, and which he should have no disposition to disregard, nevertheless in the case he had before him a very different one was shown upon its face, and the decision he was about to make was, therefore, not inconsistent with the other.

In the case of Manufacturing Co. v. White, 1 Fed. 604, Judge Treat states the rule to be that there must be a final decree upholding the validity of the patent upon its merits to invoke the rule that in subsequent cases by precedent or comity provisional injunctions will

issue without more ado, but it must be a fair contest, and a bona fide contest resulting in a decision that the patent is valid. He says:

"I make the remark 'after a fair contest,' because sometimes it has been supposed that a mere decree entered pro forma on the merits is sufficient in itself to require all other United States circuit courts to grant a provisional injunction. Not so. We have held in this circuit that it must have been an honest, and not a collusive, matter."

Again:

"When one of these matters is presented to the judges of the circuit court, they are bound to see whether it is a consent or a collusive decree, in order to form a basis on which the party obtaining it might go through the country levying tribute."

He then decides the case against the plaintiff upon the ground that in that particular case there was no infringement shown. The affidavits of the plaintiff showed that he was of the opinion that his patent had been infringed, but that was merely to assume the functions of the court, and swear to the case as he had averred it in his bill. He did not prove the specific facts necessary to show the infringement.

In the case of Wilson v. Coon, 6 Fed. 611, 621, in speaking of the force of prior decisions in cases of reissue, Judge Blatchford remarks:

"General observations by a judge or a court in deciding a case must always be read in view of the facts of the case that was sub judice, and are not necessarily authoritative, ex vi termini, in another case, where the facts are not the same, although entitled to consideration as are the views of a text writer of experience and repute."

In the case of Hayes v. Leton, 5 Fed. 521, Judge Benedict declined to be bound by a former adjudication in the same circuit, where the answer set up that that case was the result of a collusive agreement between the parties, saying, however, that he did not determine the effect of the answer in this regard, but found the circumstances to be such that the final decree had no greater effect than as evidence of the acquiescence of the parties sued in that case in the validity of the patent. "For," says the learned judge, "that decree was because of an understanding between the parties that contests should cease, and not because the court had examined the plaintiff's patents, and found them to be valid." He held, also, that the acquiescence which was evidenced by such consent was not sufficient to support an application for a preliminary injunction.

In De Ver Warner v. Bassett, 7 Fed. 468, a consent decree was entered against the defendants after a struggle for a preliminary injunction, the granting of a temporary injunction, and a subsequent rehearing; and Judge Shipman held distinctly that such a proceeding as that was not an adjudication to support the application for preliminary injunction, and, speaking of the acquiescence of the public in the validity of the patent, he says:

"But, in the absence of an adjudication, made after full investigation of the art and a final hearing, I am very loath to grant an injunction, because, although this patent may have been heretofore respected, out of the multitude of different styles of corsets which have been worn it would be not unlikely that it should hereafter be ascertained that some manufacturer had made and sold a style which anticipated the patented article."

In Worswick Manuf'g Co. v. City of Kansas, 38 Fed. 239, Judge Philips, speaking of this rule of prior adjudications in a case where it was not between the same parties, says that:

"The broadest application that can possibly be claimed for this principle is that the decision of courts of co-ordinate jurisdiction upon the same subject-matter of controversy is entitled to high respect as a precedent, when the subsequent case presents substantially the same state of facts. The former case is not conclusive. After giving due weight to all prior adjudications, the question of infringement of a patent is still to be determined in each particular case as it arises on the evidence adduced. * * * Where the facts in evidence are materially different, a decision of the supreme court itself sustaining a patent may not be followed in a suit between other parties. * * * A comparison of the pleadings and evidence in the Buffalo Case [20 Fed. 126] with these in the pending case satisfies us that the questions of fact as well as law to be considered and determined here are materially different. The defense is not only placed on new and additional grounds, but new and important facts have been developed and presented. The case, therefore, must stand on its own merits."

In Coburn v. Clark, 15 Fed. 804, Judge Treat adverts to the necessity of giving careful attention, upon an application for preliminary injunction, to the question of confining the prior adjudications to those matters which were fairly decided, and says that:

"Preliminary injunctions are not to be granted, it may be destructively, to defendants merely because an indefinite decision has been made by some court whose views are not disclosed in its decree; and, on the other hand, when plaintiff's rights have been fairly determined, should piracy be tolerated pendente lite?"

In the case of Foster v. Crossin, 23 Fed. 400, there is a discriminating opinion by Judge Carpenter, in which he was considering the question whether a preliminary injunction should ever be granted where there is no prior adjudication in favor of the patent, and no satisfactory proof of acquiescence by the public, and he held that an injunction might be issued even in such a case.   He says this:

"Undoubtedly, the production of the patent alone can in no case raise the presumption in favor of the patentee sufficient to justify the order of a preliminary injunction; and it is perhaps usually true that the most satisfactory basis for finding such a presumption will be in a judicial decision, or in long uninterrupted use. But I am not prepared to say that the presumption can arise in no other way. It is true that a rule will be found laid down in many cases in terms which, taken by themselves, are broad enough to support the contention of the respondents; but it is also true that in many, if not most, of these cases, the rule is stated more broadly than is necessary to the decision. * * *"

And he proceeded to grant an injunction in the case of a recent patent, where there had been no previous adjudication, upon proof that was satisfactory to him, showing that there is still left in both directions ample freedom of judgment; and I think the general result is that substantially each case must stand upon its own merits, except in the case of a final decree after a manifestly contested litigation, when that decree will be taken as sufficient, in itself, for a preliminary injunction, if it appear that the facts were substantially the same, and no new issues have been made, and no new proof produced.   The correctness of Judge Carpenter's decision in the above case is, however, challenged in Dickerson v. Machine Co., 35 Fed. 143, in which Judge Lacombe quotes approvingly that:

"Under the uniform ruling of the courts of the United States for more than half a century, if there has been no decision on the patent by a United States court on the merits, the party is driven to show that his patent went into use undisputed, for a sufficient time to raise a prima facie case in his favor."

The only relaxation of this rule pointed out by the learned judge comes when the validity of the patent has not been assailed, and the proof of infringement is clear, as one judge says, "beyond a reasonable doubt."

In the case of Edison Electric Light Co. v. Beacon Vacuum Pump & Electrical Co., 54 Fed. 678, Judge Colt holds that:

"The general rule is that, where the validity of the patent has been sustained by prior adjudication, and especially after a long, arduous, and expensive litigation, the only question open on a motion for a preliminary injunction in a subsequent suit against another defendant is the question of infringement, the consideration of other questions being postponed until final hearing."

—For which he cites a great number of cases. He remarks further that:

"The one exception to this general rule seems to be' where the new evidence is of such a conclusive character that, if it had been introduced in the former case, it probably would have led to a different conclusion. The burden is on the defendant to establish this, and every reasonable doubt must be resolved against him."

—For which, also, he cites a large number of cases.

Other cases cited by the plaintiffs in favor of the contention that we are bound by the prior adjudications here presented are: Electric Manuf'g Co. v. Edison Electric Light Co., 10 C. C. A. 106, 61 Fed. 834; American Bell Tel. Co. v. Western Tel. Const. Co., 58 Fed. 410; American Bell Tel. Co. v. Brown Telephone & Telegraph Co., Id. 409; Norton v. Can Co., 57 Fed. 929; Telephone Co. v. Cushman, Id. 842; Edison Electric Light Co. v. Mt. Morris Electric Light Co., Id. 642; Spindle Co. v. Turner, 55 Fed. 979; Consolidated Electrical Storage Co. v. Accumulator Co., 5 C. C. A. 202, 55 Fed. 485.

The defendant also cites numerous other cases in favor of his contention that it is only final adjudications in contested cases that have any conclusive force: Consolidated Roller-Mill Co. v. George T. Smith Middlings Purifier Co., 40 Fed. 305; Parker v. Brant, Fed. Cas. No. 10,727, 1 Fish. Pat. Cas. 58, where it is said that, if the new evidence has been overlooked, the case is open; Machine Co. v. Hedden, 29 Fed. 147, where Judge Wales quotes approvingly from Judge Blatchford in Page v. Telegraph Co., 2 Fed. 330, this comprehensive language:

"It is well settled that, even after the validity of the patent has been established in a suit, and notwithstanding the presumption thereby raised that the patent is valid, it may always be shown in another suit on the patent against another defendant, and even in answer to an application for preliminary injunction in such suit, that the right claimed by the plaintiff in the new suit was not, either as to its nature or its extent, fairly in controversy in the former suit, or that the material facts were not known or considered when the former suit was tried, or that there are relevant matters which were not adjudicated in the former suit,"—citing Pavement Co. v. City of Elizabeth, Fed. Cas. No. 312, 4 Fish. Pat. Cas. 189.

Defendant's counsel also cites in his brief Consolidated Safety-Valve Co. v. Ashton Valve Co., 26 Fed. 319, where Judge Colt boldly declared that a decision of the supreme court of the United States is

not sufficient to control if there be a doubt about the effect of that decision, at least not until a final hearing, when, upon a full investigation of the facts, it could be seen whether or not the pending case was comprehended within the ruling of the supreme court in the prior case; and that on an application for preliminary injunction it was open to the court to postpone the determination of the force and effect of the prior adjudication until there had been a full investigation. He also cites Tyler v. Hyde, 2 Blatchf. 308, Fed. Cas. No. 14,-309; Cary v. Bed Co., 27 Fed. 299; Edgarton v. Manufacturing Co., 9 Fed. 450; Spring v. Sewing-Mach. Co., Id. 505.

In all these citations on both sides there is a notable absence of any decision by the supreme court of the United States, and only a few are cited from the recently established circuit courts of appeal upon this question, which fact seems to me to be worthy of passing remark. Hence it is difficult to find any settled rule of judgment in the courts. The best opinion I can form from these authorities is that the courts everywhere recognize as quite conclusive a final adjudication that has been the product of an earnest, honest, and effective litigation, free from any suspicion of having been procured by arrangement between the parties or negligent abandonment by the defendant; but all other adjudications at most are persuasive only, and it is open to the court in the pending case to re-examine the question de novo. And, even where there has been a final decree without suspicion of collusion, if the new litigation presents a new attack upon the patent, or new evidence of importance entitled to consideration as presenting a really new issue, and not a mere pretense of one, to regain a footing in the courts, the pending case is still open, and not concluded by the old litigation about the patent. The patentee is entitled to stability of decision, and to be free from vexatious litigation, or the grant of invention is of little value to him; yet he can claim this only when the patent has stood the test of genuine litigation, and thorough judicial scrutiny in all its parts. And there is a difference in the effect of the old decree where the new case is between the same parties and where they are different, for one not a party to the old suit cannot be bound by any neglect in that suit to present all issues and all available proof to sustain them.

We come now to the question of infringement. Upon the proof before us, consisting of ex parte affidavits, the fact of infringement does not seem to be established by convincing evidence of even a preponderating character, to say nothing of the rule of reasonable doubt suggested in some of the cases. I note that it is frequently said in the cases, as by Judge Treat in Coburn v. Clark, supra, that it is always unadvisable on a preliminary motion to express an opinion concerning the merits of the controversy to be determined at the final hearing. But a good deal depends here upon the essence of the thing patented. Some of the things are so simple that the affidavits, as applied to the issues, will be sufficiently convincing; but where the patent is for complicated processes that involve obscure and hidden laws of mechanical or chemical action, mere affidavits and ex parte opinions of experts are not so forcible in the consideration of the question of a preliminary injunction. In a case involving photo-

graphic films made according to the formula of a patent, Judge Coxe said that:

"This important question ought not to be determined on affidavits. The present aspect may be changed when the ex parte opinions of the affiants have passed through the alembic of a trial, and have thus been distilled and purified. Many theories now advanced may not be able to stand the test of cross-examination. It is sufficient that the question of infringement should not be determined upon affidavits in a case where no serious injury will be done by postponing the decision until the final hearing." Celluloid Manuf'g Co. v. Eastman Dry Plate Film Co., 42 Fed. 159,—citing many cases not necessary to be repeated here.

Also, in Carey v. Miller, 34 Fed. 392, where the patent had been several times before the courts, and had been sustained to the extent of covering a process "when the springs are kept below red heat," Judge Lacombe said:

"It may be that the patent is sufficiently broad to cover any degree of heat whatever, but that has not been as yet held by the courts which have had it under consideration, and therefore upon application for preliminary injunction the patent will be presumed valid only to the extent expressly covered by the decisions referred to. Upon the case as it now stands the weight of evidence indicates that the defendants, in the process used by them, heat the springs above this limit. It may be that the defendants' affidavits are disingenuous, and that when the later details of their process, now so briefly described, shall be set forth, it will appear that they do infringe the patent, even when given the limited construction which would confine it to heating not above red heat. This motion, however, can only be decided upon the papers before the court, and giving due weight to the sworn statements presented by both sides."

—And he denied the motion, with leave to renew it if the plaintiffs should thereafter produce any further evidence that the process was within the narrow construction of the claim that was admitted.

Again, in Dickerson v. Machine Co., 35 Fed. 143, Judge Lacombe draws pointed attention to the distinction between a case where a broad construction of the claims to the patent would comprehend the disputed contrivance or article of the defendant and one in which a narrower construction of those claims would exclude it. In such a condition it necessarily requires that the court hearing the application for a preliminary injunction shall decide which is the correct construction of the patent; and, if that be seriously and formidably disputed, as it is in this case, it seems to me that the preliminary injunction should be refused, unless there is a sufficient judicial support upon plenary hearing for the broader construction demanded; or at least a court will not be inclined, upon ex parte affidavits used at the preliminary hearing, to decide upon the proper construction of the patent in a doubtful case, unless it shall appear that irreparable injury will result to the plaintiff, and then it might be that the court would grant an injunction upon terms which would protect the defendant.

This case seems to me to be one beset with doubt and difficulty upon the questions relating to both the construction of the words of the patent and the essential elements of the compound alleged to be an infringement of the plaintiffs' patent by the defendant. The affidavits filed are exceedingly unsatisfactory and inconclusive. That of Miles, the manager of the plaintiff company, is nothing more than the expression of his opinion that there has been an infringement. And, as remarked by Judge Treat in one of the cases just cited, this

is only a reiteration of the averments of the bill in that regard.    Incidentally, in his affidavit, he fully explains the reason for this peculiarity.    He says:

"The location and detection of infringing devices under this patent has been extremely difficult from the fact that it is desirable, if not essential, in order to determine the exact compound, to obtain this compound before it has been burned or baked; and as the compound can be made in any pottery, and with the aid of machinery such as is generally used in a pottery, it is possible for almost any potter to enter into the manufacture of infringing devices," etc.

Again:

"It is difficult for the complainants to furnish the proofs usually required in infringement cases when the infringement is carried on secretly."

Further, he says that his agent, Hoffman, "was unable to secure any of the compound in a state which would enable us to make a mechanical separation, which would enable us to determine the exact proportions of the granular and plastic materials used, which elements are absolutely necessary, as has been repeatedly demonstrated."    Now, this may be unfortunate for the plaintiff company, but the courts cannot, upon such an application as this, take that difficulty into consideration, and, because of it, grant a preliminary injunction, without satisfactory proof.    Mr. Miles, further along in his affidavit, says that his experience in the matter leads him "to believe that it is impossible to make such a tube for a filtering medium without infringing this patent, and I have not the slightest hesitancy in saying that I believe fully that this tube is an infringement."    This, undoubtedly, is his own opinion, but it is not proof of the facts which are required to enable us to determine whether there has been any infringement of this patent.    The affidavits of the experts Dickore and Wesener are quite as unsatisfactory.    They seem to have analyzed a piece of the filter exhibited as the defendant's infringement, and a bit of unburned compound which the plaintiffs' detective, Hoffman, furnished from the Tiffin pottery.    But, laying aside the equivocal character of this material that was analyzed in its relation to the defendant, the testimony of the experts falls far short of any conclusive proof that the compound found in the exhibit is an infringement of the plaintiffs' patent.    Dr. Dickore says:

"I am of the opinion that there is strong reason to believe that the sample, No. 2, analyzed by me, contains the invention set forth in the said patent. Of course, it is not possible to tell by a chemical analysis the exact proportion of the amorphous or plastic materials and the granular or crystalline materials, inasmuch as it is the physical qualities which determine the character of porosity, and therefore a physical or mechanical separation is essential to determine this accurately."

This explains the reason for the want of satisfactory proof, when you to turn to Hoffman's affidavit, and see the difficulties which have surrounded the plaintiffs in being unable to procure and establish as certain a sample of the unburned compound out of which the defendant's alleged infringing contrivance is made.    This kind of proof will not do on an application for preliminary injunction.    It does not make certain, or even probable, in such processes as we have under review, the fact of infringement.    Prof. Wesener's affidavit is equally inconclusive.    He says:

"The burned sample referred to shows it to be extremely porous, and indicates that it has been burned at substantially the temperature named in the patent, and I have no doubt that the same would answer for filtering in substantially the same manner as the compound set forth in the said patent."

This evidently is only guesswork as to the temperature, and it is to be noted here that one has only to fairly consider the specifications and claims of this patent to see from the face of it that the fact that the defendant's filter will do precisely what the Pasteur filter will do in the way of arresting disease germs, or any other microbes, is not at all any evidence of infringement; and, when we read its words in the light of the records of the patent office, the conclusion is irresistible that the plaintiffs cannot claim this capacity as a test of their patent, and must be confined to a showing that the alleged infringing filter arrests these germs by the use of a compound the substance of which is the same as that described in the patent, both as to elemental constituents and the treatment used in the process of its manufacture. And, if equivalents be relied on, they must be of constituent elements and processes, and not of mere functions or results. If any manufacturer can produce a filter that will do what the Pasteur filter does without the use of the same constituent elements contained in the description of the patent, and put together by the same process that is described in the patent; or if, by the use of the same constituent elements, put together in an entirely different way, he can produce the same results, it seems to me there would be no infringement. Of course, this is said with due regard to the use of what may be, in the light of the history of this patent in the patent office, regarded as equivalents covered by the patent. But is it not plain to see that in this kind of a complicated issue the court can come to no satisfactory conclusion on the question of infringement until there has been a most complete and thorough investigation of the facts upon the final hearing? And this delay, I conclude, is all the more available to us in this case without a preliminary injunction, because, confessedly, the bill is aimed more at a threatened infringement than at any large or extensive present dealings by the defendant in the alleged infringement itself; and the circumstances of the defendant disclosed by the proof indicate that he cannot, pending the hearing, do any very serious injury to the plaintiffs. It is alleged that he is insolvent, and without capital, and he himself says that his operations in the manufacture of this class of filters have been more in the way of experimentation than otherwise. But, however this may be, it does not seem to me to be a case for preliminary injunction upon the plaintiffs' own proof of the injury that is threatened, or of the infringement that is claimed or feared by them.

The defendant's affidavit denies almost seriatim the affidavits of Miles and Hoffman,—the latter the detective agent of the plaintiffs,— and it appears by the affidavits that there was quite a game of shrewdness going on between this detective and the defendant. The detective was trying furtively to get proof from the defendant, and the defendant says that, discovering this, he imposed on the detective by furnishing him with a character of filter that was the rejected product of one of his experiments, and does not at all represent any-

thing that he is using or selling: and, as to the sample of the unbaked material which this detective furnished the plaintiffs' experts, it is plain that he obtained it under circumstances that would not be binding on the defendant as any admission of its identity, and it may or may not be the substance that is used by the defendant. There is no certainty of it, and only suspicion that it may be the same used in the exhibit.

The defendant asserts ignorance of the chemical and mechanical nature of the filters which have been manufactured for him, and states his information and belief that they are not the same as that substance described in the patent. Somewhat amusingly, he exhibits and calls attention to a circular of the plaintiffs, in which they say that the material they use is imported by them from France. This is what they say in the circular:

"We import the filtering medium directly from France, where alone the material is found of which it is made. We construct the filters entirely in our own factory, according to our improved methods, which are covered by letters patent. The material that is employed in their construction is the best that is known for the purpose, and we carefully test every filter before it leaves our factory."

The defendant suggests in his affidavit and argument that, if this be true, the American materials of which his filters are made cannot be an infringement of the plaintiffs' patent; or, at least, that it will not be held so to be in favor of their application for a preliminary injunction until they show that since the circular was issued it has been discovered that the materials which they thought could be found only in France could be found also in Ohio.

The affidavit of Albert Brewer, who is the manager of the Tiffin manufactory, where the defendant's filters are made, is somewhat more satisfactory. He swears positively from his experience as a manufacturer of all kinds of pottery that he had no knowledge and no information as to the processes described in the plaintiffs' patent, and that there was no attempt on his part to select the same compounds, or to follow the same processes. In the matter of heating, he says that the defendant's tube is much less porous than the plaintiffs' tube, and is burned at a much higher degree of heat, say from 2,500 to 3,000 degrees Fahrenheit. This brings the case quite closely within the ruling made by Judge Lacombe in the case of Carey v. Miller, 34 Fed. 392, where he had under consideration a patent for tempering coiled springs, and the process set forth in the patent was that the springs were to be subjected to a degree of heat which is about 600 degrees, more or less. He refused the preliminary injunction because it was claimed and shown by the defendants that it was probably true that they heated their springs above this limit. The baking heat described in the plaintiffs' patent here is from 1,850 to 2,460 degrees Fahrenheit, a very wide margin, by the way, for accuracy, in a patent like this; and the affidavit of Brewer says that the defendant's tubes are subjected to a heat from 2,500 to 3,000 degrees Fahrenheit, an equally wide margin for accuracy of information. We cannot say here any more than Judge Lacombe could say, on this application for preliminary injunction, whether or not this article

of the defendant's is an infringement, under such circumstances as these. It is quite true that this affidavit of Brewer's is somewhat disingenuous in its refusal to disclose the precise character of the compound he uses for the defendant, and the exact processes by which it is completed in the factory. He offers, in connection with his refusal, to disclose it confidentially to a commissioner of the court, but this scarcely will relieve the fact that he does refuse to disclose it, claiming it as a trade secret of his own. But I am not prepared to say that, if we give the most comprehensive effect to this refusal, the defendant is bound by it; nor am I quite prepared to say that on a defense like this of his manufacturer he is bound to make such a disclosure in an affidavit. If the plaintiffs need the proof in aid of their bill, they have the remedy of a bill of discovery, or of an examination of witnesses, and, in the absence of a resort to some such remedy for obtaining proof, it may be that the refusal to disclose is not reprehensible. The defendant is under no obligation to aid the plaintiffs in the procurement of their proof, and this is only another illustration of a necessity for waiting, in a case like this, until the final hearing, before issuing any process of injunction.

I do not deem it necessary to go into any consideration of, or to express any opinion upon, the validity of this patent. I may be permitted to say, however, that it seems to me that there is much force in the contention of the defendant's counsel that the plaintiffs cannot, on this application, claim any consideration for what may be called the hygienic qualities of this Pasteur filter. It may be a useful discovery that filters may be made of sufficient compactness to arrest and detain the smallest microscopic germs that are found in liquids, and that it is desirable to remove them whenever they are deleterious to human health; but is such a discovery patentable if the filter that is used is obtained by a process of production that is as old as the oldest civilization itself? I do not undertake now to answer this question, but only to say that the argument of defendant's counsel is so cogent upon that subject, and his quotations from the books of science and art, like Ures, Dict. tit. "Clay," Encyclopædia Britannica, tit. "Pottery," Zell's Encyclopædia, tit. "Cooler," Knight's Am. Mech. Dict. tits. "Alcarraza," "Crucible," and "Seggar," and his citations from the patent adjudications, are so apt, that my own mind is left in a state of serious doubt whether or not this patent can have any aid whatever from the fact that its filter is put to so important and beneficent a use as that which has been suggested.

It was said in Corning v. Burden, 15 How. 252, 268, that "it is for the discovery or invention of some practical method or means of producing a beneficial result or effect that a patent is granted, and not for the result or effect itself"; or, as counsel puts it, "a function is not an invention, and is never patentable." This is for the present, upon this application for a preliminary injunction, quite a sufficient answer to the ostentatious display in the bill and affidavits of the great benefit of the Pasteur system of filtering out the germs of disease from the liquids we use for food or drink. If it be the application of an old thing to a new use, it certainly is not patentable; and, as we are unable to say upon the proof whether it is anything

more than this, we ought not to interfere with the defendant as an infringer until there is more satisfactory evidence upon the whole subject.

The defendant further contends that it is only a difference in degree between the meshes of the filter and the flour or meal sieve or the common strainers for liquids in domestic use, and that this Pasteur filter is based upon the well-known fact that bodies to be arrested can be intercepted by meshes which are smaller than themselves; that the elimination of microscopic bacteria is nothing more than the old process of eliminating tadpoles, water bugs, and wrigglers; that the operation is not patentable unless some new process is invented for the purpose; that this patent must be confined to the peculiar and particular compound itself; and that the invention in this case consists, if there be any, of a compound that is identified solely by its designated constituents, their given proportions, and the expressed manner of their compounding. This seems to me to be a formidable attack upon the patent, and that it is not impossible that it may result, if not in its overthrow, at least in limiting it to very much narrower benefits of protection than those indicated by the contention and the argument of the plaintiffs. As stated by Judge Jackson on another occasion in the court of appeals, to the naked eye this exhibit of the defendant seems quite like, if not identical with, the filter of the plaintiffs; and, if the patent is to receive the broad construction he seemed to approve in considering the application for a preliminary injunction then pending in another case, it may be that this defendant will be found to have infringed the plaintiffs' patent, but, until it is settled by a more thorough investigation of the facts that the patent is to receive that broad construction, a preliminary injunction should not issue. Application denied.